## S90A0264. ROSS v. KEMP.
### (393 SE2d 244)

Per curiam.

This is a case in which petitioner's life hangs in the balance, thereby causing this court to pay the utmost attention to rights guaranteed under the Constitutions of the United States and the State of Georgia. See *House v. Balkcom*, 725 F2d 608, 615 (11th Cir. 1984).

This appeal follows our grant of petitioner's application for re-

view of the denial of his petition for habeas corpus relief.[1] Based upon our conclusion that petitioner received ineffective assistance of counsel at trial, we reverse the habeas court and grant petitioner habeas corpus relief.

The Sixth Amendment to the U. S. Constitution guarantees a criminal defendant the right to effective assistance of counsel. *McMann v. Richardson*, 397 U. S. 759, 771, n. 14 (90 SC 1441, 25 LE2d 763) (1970).

> The right to counsel plays a crucial role in the adversarial system . . . since access to counsel's skill and knowledge is necessary to accord [a defendant] the "ample opportunity to meet the case of the prosecution" to which [he is] entitled. [Cits.] . . . [I]t envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair. *Strickland v. Washington*, 466 U. S. 668, 685 (104 SC 2052, 80 LE2d 674) (1984).

The evidence presented at the habeas hearing established that petitioner was represented at trial by two attorneys, each of whom actively participated in his defense. James R. Venable was retained as counsel by petitioner's family. Indicating its belief that Venable's advanced age made him unable to handle the unified appeal procedure, the trial court appointed an attorney to assist Venable in defending petitioner. While appointed counsel initially recognized his role as assistant, exemplified by his preparation of motions for Venable's signature, he took it upon himself to act as lead counsel after witnessing Venable fall asleep during discovery.

Venable never had a substantive discussion with appointed counsel before trial as to the theory of the case to be presented to the jury. It was not until after the State had rested that the two attorneys discussed the defense's theory of the case. At this point, Venable insisted that petitioner testify in his own defense, stating that he had never gotten anyone acquitted of a murder charge without the defendant having taken the stand. Appointed counsel opposed the petitioner testifying because he feared that petitioner's testimony, focussing on his unsupported alibi, would undo the groundwork of mental instability laid by appointed counsel during the State's presentation of its

---

[1] Petitioner was convicted in 1984 and sentenced to death for the murder and rape of an elderly DeKalb County woman; the burglary of her home; and for forgery and financial transaction card fraud. See *Ross v. State*, 254 Ga. 22 (326 SE2d 194) (1985).

case. Without any preparation of petitioner for examination or cross-examination, and over appointed counsel's voiced objection to the court, Venable called petitioner to the stand where petitioner contradicted eyewitness and circumstantial evidence linking him to the crimes. The presentation of the mutually exclusive defenses continued through closing arguments in which Venable asked the jury to acquit petitioner based upon a reasonable doubt that petitioner committed the crimes, while appointed counsel continued to advance the two theories involving mental illness as well as arguing the sufficiency of the evidence, in deference to petitioner's testimony. The confusing variety of defenses prompted the district attorney in his closing argument to liken the defense to a "buffet" wherein the jury could select the defense.

We have focussed our examination of retained counsel's performance and the synergistic result. Each attorney seemingly acted as lead counsel without informing the other of the direction the defense was to take. Venable insisted upon petitioner testifying in an effort to instill into the jury a reasonable doubt that petitioner had committed the offenses, disregarding the fact that, in Venable's silent presence, appointed counsel had cross-examined State's witnesses in an effort to lay the groundwork for a mental illness defense. While the presentation of inconsistent defenses by one attorney may not be worthy of habeas corpus relief (see, e.g., *Brown v. Dixon*, 891 F2d 490 (4th Cir. 1989)), each attorney here espoused a defense at odds with that of the other, causing a discernible split within the ranks of the defense team which prevented counsel from, among other things, effective performance of the duty to assist petitioner in the decision whether to testify in his defense. See *Magill v. Dugger*, 824 F2d 879 (11th Cir. 1987). Petitioner's decision to testify, as Venable insisted was necessary, was made during a mid-trial recess of only a few minutes' duration, during which he was informed of his right to testify or not to testify, and given conflicting counsel from his attorneys regarding the wisdom of taking the stand. After petitioner made his decision to testify under those strained circumstances, no effort was made to prepare him for examination or cross-examination, and no additional time was sought from the court in order to perform that vital function. Under these circumstances, retained counsel simply abandoned the duty to assist petitioner in the decision whether to testify in his defense. *Magill v. Dugger*, supra.

The results of the lack of preparation were immediately apparent. Responding to Venable's questions, petitioner denied all involvement in the victim's death and asserted an alibi defense of which his attorneys were unaware and which was seriously discredited on cross-examination. In addition, Venable based a portion of his examination of petitioner upon Venable's erroneous perceptions of the State's evi-

dence. The State's ensuing cross-examination of petitioner further damaged his credibility and made him appear to be a person who had decided to feign insanity in order to avoid a conviction.

The presentation of a fractured defense, and the placement of petitioner on the stand with no preparation whatsoever in a trial in which his life hung in the balance is evidence of ineffectiveness "so pervasive that a particularized inquiry into prejudice would be 'unguided speculation.' [Cit.]" *House v. Balkcom*, supra at 620. We therefore conclude that petitioner did not receive the effective assistance of counsel guaranteed him by the Sixth and Fourteenth Amendments to the U. S. Constitution, and reverse the judgment of the habeas trial court and remand the case to that court with direction to issue a writ of habeas corpus unless the State, within a reasonable time, sets the case for a new trial.

*Judgment reversed and remanded with direction. All the Justices concur.*

DECIDED JULY 11, 1990.

*George H. Kendall III, Margaret H. Campbell, C. Thomas Davis,* for appellant.

*Michael J. Bowers, Attorney General, Dennis R. Dunn, Assistant Attorney General,* for appellee.