## A99A0613. SNYDER v. THE STATE.
(519 SE2d 509)

SMITH, Judge.

Frederick Snyder was convicted of one count of burglary. His motion for new trial was denied, and he appeals. Snyder contends that his in-custody statement was not voluntarily given, that certain portions of his statement were erroneously admitted, and that without his statement, the State presented insufficient evidence of his guilt. Although we agree with Snyder that the entirety of his statement was not admissible, we conclude that any. error was harmless given the overwhelming evidence of his guilt. We consequently affirm.

Construed in support of the jury's verdict, evidence was presented that the custodian of the First United Methodist Church of Brunswick discovered, when he reported for work between 6:30 a.m. and 7:30 a.m. on November 12, 1996, that someone had broken into the church. He saw that a window in a door had been broken, a soft drink machine had been broken into, and "several door knobs [had been broken] off the doors" inside the church. He found a hammer belonging to the church in an area near the drink machine and pliers and a screwdriver in the ladies' bathroom. He identified at trial the coin box from the drink machine. The coin box was found inside the ladies' bathroom. The church secretary testified that between $60 and $65 was taken from the drink machine.

Officer James Jordan of the Brunswick Police Department testified that while on patrol at about 4:35 a.m. that same morning, he saw a man he identified at trial as Snyder walking toward him near the church parking lot. Jordan followed Snyder as he walked a few blocks and became concerned for Snyder's safety because he was walking toward "a rough area." Jordan pulled up to Snyder and asked where he was going. Snyder replied that he was "heading out to the interstate to try to catch a ride" to Savannah. He told Jordan that he rode with truck drivers and helped them unload trucks, and that he had ridden into town with a container truck driver. Jordan took Snyder to the interstate, allowing him to ride in the front seat of his patrol car, and met a county police officer who took Snyder to a truck stop. At approximately 6:42 a.m., after he dropped off Snyder, Jordan responded to a call concerning the burglary at the First United Methodist Church and saw that a window pane had been broken out of a doorway leading into the church. He also found a bag of potato chips and an open box of cookies in the kitchen of the church and another at the top of a set of stairs and, just outside the door of the church, a cigarette pack and a partial butt of a cigarette. In the ladies' bathroom he observed the pliers and coin box found earlier by the custodian; he also saw coin wrappers in the trash can. He identi-

fied a photograph depicting a room having a door with a "money sign" on it and testified that "someone had rummaged through the room."

Jordan then contacted Officer Lowe of the Glynn County Police Department, telling him that he had "dropped a guy off to one of our county officers . . . and that he needed him back." Lowe found Snyder at a nearby truck stop based on a description given by Jordan. He asked Snyder whether the police gave him a ride, and Snyder responded affirmatively. Snyder agreed to return to the city police station with Lowe, after Lowe told Snyder that "they wanted to talk."

When Snyder arrived at the Brunswick Police Department, he was interviewed by Officer David Seawell. A pat-down search prior to the interview revealed a $10 package of rolled coins inside his coat pocket and a partial pack of Monarch cigarettes inside his shirt pocket. With respect to the rolled coins, Snyder spontaneously blurted out, "I found that." Seawell read Snyder his *Miranda* rights and began the interview. Snyder first denied breaking into the church. Seawell testified that he "then gave him a way out by saying perhaps you didn't know it was a church and you broke in it." Snyder again denied that he committed the crime. According to Seawell, however, they "talked further and the conversation led to him admitting to me that he was a burglar. He told me that his whole criminal life consisted of numerous burglaries." The conversation continued as Seawell stressed the fact that because Snyder was from out of town, "perhaps he didn't know it was a church."

Snyder then admitted that he broke into the building without realizing it was a church. He told Seawell that he had been sitting in the breezeway area, was cold, and had smoked his last Monarch cigarette; he "decided to break in to get some money so he could move on to the next town." He also stated to Seawell that his lifestyle involved "traveling from one place to another, whenever he needs money, he breaks in to a place." Snyder admitted he used a section of pipe to break into the window of a door. He also admitted breaking into the drink machine, taking the machine's coin box to a bathroom and emptying it onto a towel on the counter top, and rolling the coins he took from the box. Seawell testified that after Snyder gave his statement, Snyder called Officer Jordan on the telephone and told him "that he was sorry for what he had done."

1. Snyder first contends that his statement was not voluntarily given. During a hearing held before trial, Seawell testified that he read Snyder's *Miranda* rights to him and that Snyder signed a waiver of rights form and understood the English language. According to Seawell, Snyder did not request the assistance of an attorney, did not appear to be under the influence of drugs or alcohol, and was not threatened nor promised leniency. Snyder then made a statement initially denying involvement in the burglary but later admitting

that he needed something to smoke and that he broke into the church and into a drink machine and took money from the machine. He also told Seawell that he opened potato chip and cookie packages. Finally, Snyder stated to Seawell that he had recently been released from prison in Florida for burglary and had "done a lot of burglaries in the past." Snyder did not testify or offer any evidence rebutting this testimony. After finding that the statement was freely and voluntarily made, the trial court initially ruled that Snyder's entire statement was admissible but later modified the ruling to exclude evidence that Snyder had been recently released from prison. The trial court did, however, permit the State to elicit testimony that Snyder "admitted that he was a burglar; that his whole criminal life consisted of numerous burglaries."

We cannot agree with Snyder's contention that his statement was not voluntarily given. Evidence was presented that he appeared to understand the English language, that he signed a waiver of rights form, that he was not coerced into making the statement, and that he was not under the influence of drugs or alcohol when he made the statement. Ample evidence existed authorizing the trial court to find that Snyder freely and voluntarily made his statement. See *Barrs v. State*, 202 Ga. App. 520, 521 (3) (414 SE2d 733) (1992); see *Billings v. State*, 212 Ga. App. 125, 127 (2) (441 SE2d 262) (1994).

2. We do agree with Snyder, however, that portions of his statement concerning his "criminal life" as a burglar were inadmissible.

> It is the general rule that if evidence is relevant and material to an issue in a case, it is not inadmissible because it incidentally puts the defendant's character in issue. It is an equally well-recognized general rule that what is forbidden is the introduction by the state in the first instance of evidence whose sole relevance to the crime charged is that it tends to show that the defendant has bad character.

(Citations, punctuation and emphasis omitted.) *Robinson v. State*, 192 Ga. App. 32, 33 (383 SE2d 593) (1989). Snyder's statement that he "breaks into a place whenever he needs money" may have had some very marginal relevance to show his motive or intent in breaking into the church and may be considered "an integral part of a criminal confession." See *Dampier v. State*, 245 Ga. 427, 433-434 (10) (265 SE2d 565) (1980). But we cannot say that other references to Snyder's past burglaries at unknown places and on unknown dates were relevant to any issue in this trial. These references "had nothing whatsoever to do with the conduct for which he was on trial." *Robinson*, supra at 34. Instead, the only possible relevance the confession concerning generalized prior burglaries could have served

"was an impermissible one, i.e., to impugn the appellant's character before the jury by showing that he was generally prone to criminal conduct." (Citation and punctuation omitted.) Id.

Although we have concluded that portions of Snyder's statement were erroneously admitted, this does not end our inquiry, for harm as well as error must be shown to warrant reversal of a criminal conviction. Here, Snyder's statement that he broke into the church and took church property was properly admitted. Given this evidence, in addition to the other admissible evidence presented by the State at trial, we conclude that the evidence against Snyder was overwhelming, and we cannot say that any error in admitting Snyder's statement in nearly its entirety contributed to the jury's verdict. Consequently, the error was harmless. See *Willis v. State*, 199 Ga. App. 658, 659-660 (2) (405 SE2d 739) (1991); *Florence v. State*, 162 Ga. App. 830, 832 (1) (292 SE2d 923) (1982).

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED JUNE 16, 1999.

*Patrick C. Kaufman*, for appellant.

*Stephen D. Kelley, District Attorney, Gregory C. Perry, Assistant District Attorney*, for appellee.

