A06A0747. MACHUCA v. THE STATE.

(630 SE2d 828)

MIKELL, Judge.

Frutoso Gomez Machuca was indicted for rape and aggravated battery. A jury found him guilty of rape and not guilty of the battery offense. Machuca was sentenced to life in prison for the rape. He appeals from the denial of his amended motion for new trial, asserting that the evidence was insufficient to support his conviction of rape and that his trial counsel rendered ineffective assistance. We find no merit in his enumerations of error and affirm his conviction.

1. A man commits rape when he has carnal knowledge of a female forcibly and against her will.[1] Machuca concedes that DNA evidence introduced at trial proved that he had carnal knowledge of the victim. He asserted the defense of consent. On appeal, he challenges the sufficiency of the evidence by arguing that the victim's vaginal tears could have resulted from consensual sexual relations and that there were inconsistencies in the victim's testimony. Contrary to Machuca's contentions, the evidence of the victim's lack of consent in this case is overwhelming. Moreover, any inconsistencies in the victim's testimony raised a credibility issue properly determined by the jury.

> On appeal, we view the evidence in a light most favorable to the verdict, and an appellant no longer enjoys a presumption of innocence; moreover, this Court only determines the legal sufficiency of the evidence; we do not weigh the evidence or determine the credibility of witnesses. Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve, and as long as there is some competent

---

[1] See OCGA § 16-6-1 (a) (1).

evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld.[2]

Viewed in the light most favorable to support the verdict, the evidence shows that Machuca and his fiancée, Roberta "Bunnie" Olsson, who were 29 and 51 years old, respectively, at the time of trial, lived next door to the victim in a mobile home park in Marietta. The victim, who was 69 years old when the case was tried, testified that Machuca knocked on her door sometime after midnight on October 27, 2001. The victim had been introduced to him once by a friend named "Victor" who lived across the street, and she knew that Machuca lived with a woman. According to the victim, Machuca asked her to drive him to a store so that he could buy some beer. She agreed because she knew that Machuca and Bunnie did not have a car.

Although it was Sunday, the victim and Machuca found a store that sold him beer. He bought food as well. The victim and Machuca returned to the mobile home park, and each person went to their respective homes. Then Machuca knocked on the victim's door again. She surmised that he had left something in her car. Machuca told her, however, that he needed to talk. The victim left the front door and her kitchen curtains open, and allowed him to come inside. While they were talking, he put his fingers on her knee. The victim testified that she told Machuca, "you don't do that." She told him to leave, explaining that she needed to go to bed so that she could get up for church in the morning. He refused to leave, and the victim started to walk toward her bedroom to get her gun. She got as far as her hallway, when Machuca grabbed her, threw her down so that she hit the coffee table, put his hand on her throat, and threatened to kill her. According to the victim, Machuca said, "I'll kill you if you scream." "I fuck all you fucking bitches. . . . All you women are bitches."

The victim testified that Machuca kept a hand on her throat as he tried to spread her legs apart, which caused her great pain in her hips because she had undergone hip replacement surgery in 1990 and had limited range of motion. Then he forced his penis into her vagina, which, she testified, felt like it was "tearing apart." The victim had not had sexual relations for 16 years. Finally, Machuca finished and left. The victim called the managers of the park, whom she had befriended, and they called the police.

Detective Christopher Patrick, a crime scene investigator with the Marietta Police Department, was dispatched to the scene at 2:56

---

[2] (Footnotes omitted.) *Glass v. State*, 255 Ga. App. 390 (1) (565 SE2d 500) (2002).

a.m. on a call of sexual assault with injuries. He was advised that a possible suspect, a Hispanic male, was in the area of lot 19, which was Machuca's home. Patrick saw Machuca, who fit the description, standing in front of his home drinking a beer. Although Machuca complied with Patrick's commands, he did not answer questions. Patrick noted that Machuca smelled strongly of alcohol. Patrick handcuffed him, placed him in the back of his patrol car, and went to the victim's home.

According to Patrick, the victim was crying and trembling; her hands were shaking. Patrick asked her what happened, and the victim told him that Machuca had forced his way inside, put his hand over her mouth, threatened to kill her, threw her down toward the coffee table, and had sexual intercourse with her against her will. However, Patrick saw no evidence of a forced entry, so he asked her to clarify that point. The victim then told Patrick that she had allowed him to come inside to drink a beer. Patrick testified that trauma victims often do not remember events exactly as they occur. He further testified that the victim was unsteady on her feet and had to be assisted in walking outside to the stretcher.

Detective Thomas Maloney testified that he interviewed the victim at the hospital. She was still crying. She told Maloney that Machuca groped her above the knee, that she told him to stop, that he laid her forcefully on the floor, that she hit the coffee table on the way down, and that he had sexual relations with her against her will.

Susan Ellis, the emergency room nurse who was on duty when the victim was brought in, testified that the victim was "crying hysterical, moaning." According to the nurse, the victim "was so hysterical, I just put my arms around her and held her, because that's the only way I could calm her. She was more than upset." Finally, the victim calmed down enough for the nurse to ask her what happened. According to Ellis, the victim said that the perpetrator knocked her against the coffee table, said he was going to "F" her, and warned her afterward that he would hurt her if she told anyone.

Ellis and Dr. William Thomas Redwood performed a sexual assault examination on the victim. A black pubic hair, inconsistent with the victim's gray pubic hair, was extracted from her vaginal vault. There were abrasions and tears at the vaginal opening. Ellis, who was qualified as an expert in conducting sexual assault examinations, testified that in her 33 years of nursing, she had not seen another patient in her 50s or 60s with vaginal tearing as a result of consensual sex. According to Ellis, her findings were consistent with forced penetration of the victim's vagina.

Dr. Redwood testified that the victim had strips of bruising on her forearm consistent with being grabbed and forcibly held. According to Dr. Redwood, the victim reported that she was thrown onto a

coffee table, held against her will, and forced to have intercourse. Dr. Redwood described the victim's emotional state as "distraught." He noted that the victim was unable to spread her legs far enough apart for the exam to be conducted, and Ellis had to hold her legs during the exam. Dr. Redwood opined that the tears in the victim's vaginal opening, as well as the bruising on her arms and her demeanor, were consistent with forced penetration.

Machuca did not testify. The defense presented the testimony of an expert witness, Dr. Steven Robert Kovac, a professor at Emory University School of Medicine in the department of gynecology and obstetrics. According to Dr. Kovac, it is "not uncommon" for the vagina of a post-menopausal woman to tear during sexual intercourse, if the woman has abstained from sexual relations for a period of time, and if there is insufficient lubrication in the area. On cross-examination, however, he testified that it is difficult to make the determination of whether rape or consensual relations had occurred solely on the basis of a vaginal examination.

We find the evidence recounted above more than sufficient for any rational trier of fact to conclude beyond a reasonable doubt that Machuca had carnal knowledge of the victim forcibly and against her will.[3] The victim's testimony alone was sufficient to authorize the jury to find him guilty of rape.[4] The additional testimony regarding her immediate outcry to detectives and medical personnel, her emotional state, and the medical findings, rendered the evidence of guilt overwhelming.[5]

2. In his final enumeration of error, Machuca asserts that, in light of his defense of consent, trial counsel was ineffective for failing to object to the prosecutor's repeated use of the term "rape" when examining the state's witnesses.

"To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense."[6] We will not disturb the findings of the trial judge, who presided over the trial and heard the evidence presented at the hearing on the motion for new trial, unless they are clearly erroneous.[7] Furthermore, "[w]e will not reverse on the basis of ineffective assistance of counsel unless

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 16-6-1 (a) (1).

[4] See *Reynolds v. State*, 269 Ga. App. 268, 270 (1) (603 SE2d 779) (2004).

[5] Id. at 271 (2) (testimony of victim, defendant's 11-year-old stepdaughter, as well as consistent testimony regarding her outcry, the physical examination results, and the DNA evidence, was overwhelming).

[6] (Footnote omitted.) *Daguilar v. State*, 275 Ga. App. 756, 758 (2) (621 SE2d 846) (2005).

[7] Id.

trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result."[8]

In the case at bar, trial counsel testified at the hearing on Machuca's motion for new trial that her failure to object was not a strategic decision. Counsel also testified, however, that she never objected to the prosecutor's use of the term "rape" because the jury had been informed at the beginning of trial that consent was a defense and that the state would have to prove the elements of rape beyond a reasonable doubt. She also believed that to object after each mention of the term would take the focus away from the issues, such as certain inconsistencies in the victim's testimony.

Machuca argues that trial counsel's performance was deficient. Even assuming that counsel erred in failing to assert an objection, however, Machuca has not demonstrated prejudice; that is, that the outcome of his trial would have been different had his counsel raised the objection.[9] He apparently concedes this point, however, as he argues that we should apply a presumption of prejudice. In this regard, Machuca contends that his trial counsel's failure to object to any of the prosecutor's nineteen references to "rape" during the three-day trial constituted a constructive denial of counsel within the meaning of *Turpin v. Curtis*[10] and *State v. Heath*.[11]

At the outset, we note that we have previously held, in similar circumstances, that trial counsel's failure to file a pretrial motion in limine requesting the court to preclude the prosecutor from using the term "rape" to describe the incident in question did not constitute ineffective assistance.[12] To be sure, "[r]eference to an incident as rape states a conclusion usually to be determined by the jury."[13] For that reason, the unrestricted use of the word "rape" may be objectionable, absent a jury instruction that the question of whether or not any rape occurred was one for its determination.[14] In this case, the trial court charged the jury, in pertinent part, as follows:

---

[8] (Footnote omitted.) *Glass*, supra at 401 (10).

[9] See *Reynolds*, supra at 271 (2) ("An error by counsel, even if professionally unreasonable, does not warrant reversal of a criminal conviction if it had no effect on the judgment.") (citation omitted).

[10] 278 Ga. 698 (606 SE2d 244) (2004).

[11] 277 Ga. 337 (588 SE2d 738) (2003).

[12] *Stewart v. State*, 259 Ga. App. 117, 123-124 (3) (b) (576 SE2d 93) (2003), vacated and remanded on other grounds, 277 Ga. 138 (587 SE2d 602) (2003), affirmed after remand, 268 Ga. App. 243 (601 SE2d 755) (2004); *Glass*, supra at 403 (10) (e).

[13] (Punctuation and footnote omitted.) *Stewart*, supra at 123 (3) (b), citing *Arnold v. State*, 166 Ga. App. 313, 317 (7) (304 SE2d 118) (1983).

[14] *Arnold*, supra. Accord *Stewart*, supra at 123 (3) (b).

The lack of consent on the part of the alleged victim is an essential element of the crime of rape. And the burden [of] proof is on the state to show a lack of consent on the part of the alleged victim . . . beyond a reasonable doubt. If the state fails to prove [it] beyond a reasonable doubt, then you should acquit the defendant.

Therefore, although trial counsel could have raised repeated objections or filed a pretrial motion in limine, where, as here, "the trial court clearly framed the distinction between consensual sexual activity and the crime of rape,"[15] the trial court's finding that Machuca was afforded effective assistance of counsel is not clearly erroneous.

Our precedents on this issue have not analyzed the deficient performance and prejudice prongs separately.[16] In this case, we hold that even if counsel erred in failing to object, this is not the type of circumstance to which a presumption of prejudice would apply. In *State v. Heath*,[17] our Supreme Court recognized three limited instances in which a presumption of prejudice may arise from counsel's errors: "(1) an actual or constructive denial of counsel, (2) government interference with defense counsel, and (3) counsel that labors under an actual conflict of interest that adversely affects his performance."[18] The Court further noted that a constructive denial of counsel may be shown "[i]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[19] In this case, Machuca argues that, absent objection to the prosecutor's use of the word "rape," his counsel failed to subject the state's case to meaningful adversarial testing. We do not agree.

Our Supreme Court has explained that an entire failure to test the state's case means a "complete" failure of performance and "must occur throughout the proceeding and not merely at specific points."[20] In the case at bar, the record shows that trial counsel filed appropriate pretrial motions, obtained funds from the court to hire an investigator as well as an expert witness, and obtained an order from the court granting her motion in limine to exclude evidence of domestic disputes between Machuca and Bunnie. During the trial, counsel

---

[15] *Stewart*, supra at 124 (3) (b). See also *Glass*, supra.

[16] See *Stewart*, supra; *Glass*, supra.

[17] Supra.

[18] (Footnote omitted.) Id. at 338. See also *Owens v. State*, 269 Ga. 887, 888 (2) (a) (506 SE2d 860) (1998) ("The circumstances under which a court will presume prejudice are extremely limited.").

[19] (Punctuation and footnote omitted.) *Heath*, supra at 338-339.

[20] (Citation omitted.) *Turpin*, supra at 699 (1).

thoroughly cross-examined all of the state's witnesses and presented the testimony of an expert witness to support Machuca's defense of consent.[21] Moreover, in her closing argument, she successfully contended that the state had failed to prove that Machuca had committed the offense of aggravated battery. Considered in context, counsel's failure to object to the prosecutor's use of the term "rape" when questioning the state's witnesses is not a constructive denial of counsel, and Machuca is not relieved of his burden of proving prejudice attributable to trial counsel's error. Our appellate courts have held that a defendant must show actual prejudice resulting from trial counsel's failure to object to witness testimony as to the ultimate issue[22] or to prosecutorial commentary,[23] and we decline to deviate from those holdings in the instant case.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MAY 5, 2006.

*Lawrence W. Daniel*, for appellant.

*Patrick H. Head, District Attorney, Bruce D. Hornbuckle, Amy H. McChesney, Assistant District Attorneys*, for appellee.

---

[21] Compare *Cochran v. State*, 262 Ga. 106, 108 (2) (b) (414 SE2d 211) (1992) (presumption applied where counsel conducted no investigation and otherwise failed to prepare for trial); *Ross v. Kemp*, 260 Ga. 312, 315 (393 SE2d 244) (1990) (presumption of prejudice applied in death penalty habeas action where counsel placed defendant on stand with no preparation and co-counsel presented fractured defenses).

[22] *Fulton v. State*, 278 Ga. 58, 63 (8) (597 SE2d 396) (2004) (officer referred to defendant as the " 'murderer in the shooting' "; defendant failed to show prejudice).

[23] *Moore v. State*, 278 Ga. 397, 399-400 (2) (a) (603 SE2d 228) (2004) (no prejudice shown from counsel's failure to object to the improper questioning by the prosecutor regarding defendant's pretrial silence); *Baldivia v. State*, 267 Ga. App. 266, 274-275 (5) (e) (599 SE2d 188) (2004) (defendant failed to show prejudice stemming from counsel's failure to object to introduction of evidence of, and comment on, his post-arrest silence).