**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 29, 2012**

# In the Court of Appeals of Georgia

A12A1526. OSEI-OWUSU v. THE STATE.                    AD-058C

ADAMS, Judge.

Nana Osei-Owusu was tried by a jury and convicted of rape. On appeal, he claims that the trial court erred by denying his motion to exclude an in-custody statement, by failing to give a requested jury charge, and by charging the jury on the law of involuntary intoxication. He further claims that his trial counsel was ineffective for failing to object to an officer's use of the word "rape" in his testimony. Finding no reversible error by the trial court or prejudice resulting from any ineffective assistance of trial counsel, we affirm.

Viewed in the light most favorable to the verdict, the evidence showed that the victim lived in Philadelphia and flew to Atlanta to visit her boyfriend Obie, who was a party promoter. On July 27, 2009, the victim went with Obie to a night club, The

Velvet Room, at around 12:00 a.m. They met a woman named Melissa there and a couple of other friends and hung out in the club's V.I.P. room for several hours, drinking and dancing. The victim drank vodka and a bottle of champagne. At approximately 3:30 a.m., Melissa walked the victim to the D. J. booth in the club to wait for Obie. Melissa left the club and let Obie know that she was leaving the victim there. At that point, the victim was noticeably intoxicated and had trouble walking. While waiting for Obie, the victim was approached by a bouncer, who told her to leave. She argued with the bouncer, and he carried her outside of the club and left her on a curb. While she was sitting on the curb, a guy later identified as Osei-Owusu took the victim by the hand and pulled her with him.

Shortly thereafter, two DeKalb county police officers working security for the club were directed to an area next to the club. Officer Danny Jordan testified that he observed Osei-Owusu standing in front of a table with his pants below his buttocks, which were visible. The victim had her buttocks on the table, her head under the table and her legs on top of Osei-Owusu's shoulders, one leg on each shoulder. The

victim's dress was pulled up and she was not wearing underwear. Officer Jordan testified that Osei-Owusu was having sexual intercourse with her.[1]

Officer Jordan grabbed Osei-Owusu's arm and Osei-Owusu shoved him away, saying "Hold on, player." With Officer Courtney Brown's help, he was able to get Osei-Owusu away from the victim and escort him to the police car. When Officer Jordan went back to check on the victim, she appeared to be almost unconscious, still laying there with her head under the table. He thought she appeared to be under the influence of some type of drugs.

When the handcuffs were placed on Osei-Owusu, he repeatedly asked Officer Jordan why he was being arrested for having sex with his girlfriend. It took almost an hour for the victim to become responsive enough to answer any questions. Officer Jordan spoke to her and she was confused - she said she was not having sex and that she was wearing underwear, which she clearly was not. Osei-Owusu was arrested and initially charged with public indecency.

Officer Brown testified that as he approached the area, he saw Osei-Owusu with his pants down, holding the victim by the waist with her legs on his shoulders,

---

[1] On cross-examination, Officer Jordan admitted that he could not actually see penetration.

and making "a pumping motion like he was having sex." The victim was motionless, her body was limp. When the officers took Osei-Owusu off of her, the victim fell toward the ground. Officer Brown caught her and placed her on the ground; she did not move. After Osei-Owusu was placed in handcuffs, the officers had to "jimmy his pants up." They also had to fix the victim's clothing because her skirt was over her head.

The officers escorted Osei-Owusu and the victim over to the police car. Officer Brown smelled alcohol on Osei-Owusu. The woman was woozy and both needed assistance walking. According to Officer Brown, Osei-Owusu was initially in custody for public indecency and maybe public drunkenness, until he could investigate further.

The victim told Officer Brown that she did not know Osei-Owusu and did not know what had happened. She smelled like alcohol and her speech was slurred. When he told her that he had seen Osei-Owusu "humping her," she began to cry and ask for Obie. Officer Brown asked someone to find Obie. When he was located, the victim left the club with him.

Officer Brown asked Osei-Owusu if he knew who the victim was and he responded that she was his girlfriend. When asked what her name was, Osei-Owusu

4

did not respond. Osei-Owusu then said that he met her on the side of the club and she approached him, took off her panties and made advances toward him.

When the victim returned to Philadelphia the following day, she went to the hospital and told the doctor that she had been sexually assaulted and that her vagina was sore on the outside. She said that she does remember Osei-Owusu having sex with her, putting his penis in her vagina, without her consent. She did not know Osei-Owusu prior to that night, did not go willingly with him, has not seen him since that night and never consented to sex with him.

1. Osei-Owusu contends that the trial court erred by denying his motion to exclude his refusal to respond when Officer Brown asked him the victim's name while he was handcuffed in the back of the police car. He argues that the statement was the result of custodial interrogation and that he should have been given the warnings required by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

Osei-Owusu filed a pretrial motion to exclude three statements made at the scene, and the trial court conducted a hearing prior to admitting the statements at trial. *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964). The first statement was in response to Officer Jordan pulling Osei-Owusu away from the

5

victim, when he said, "Hold on, player." The trial court ruled it admissible because Osei-Owusu was not in custody at the time. The second statement was made when Osei-Owusu was handcuffed and said "I can't believe I'm going to jail just for having sex with my girlfriend." The trial court admitted that statement as an excited utterance. The only statement challenged on appeal was made when Osei-Owusu was sitting in the police car and could not give the victim's name in response to Officer Brown's question. Officer Brown admitted that he did not read Osei-Owusu his *Miranda* rights. Over trial counsel's objection, the trial court ruled that statement admissible as part of the on-scene investigation to determine how to charge Osei-Owusu.

*Miranda* warnings are required to be administered when an individual is interrogated while in custody. *Syfrett v. State*, 210 Ga. App. 185, 186 (3) (435 SE2d 470) (1993). *Miranda* warnings are not a prerequisite to the admission of voluntary statements not made in response to any form of custodial questioning or interrogation. Id. The term "interrogation" refers not only to express questioning, but also to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an

6

incriminating response from the suspect." (Footnotes omitted.) *Rhode Island v. Innis*, 446 U. S. 291, 301 (100 SC 1682, 64 LE2d 297) (1980).

Officer Brown should have known that asking Osei-Owusu his claimed girlfriend's name after the victim had just stated that she did not know Osei-Owusu was reasonably likely to elicit an incriminating response. Although we agree that the response was given at a time when Osei-Owusu should have been given a *Miranda* warning, we find no basis for reversal because the error is harmless beyond a reasonable doubt. The testimony of other witnesses that the victim was not from Atlanta, had another boyfriend whom she was with that night, and did not know Osei-Owusu makes his response indicating that she was not his girlfriend cumulative of other admissible evidence. See *Cox v. State*, 274 Ga. 204, 205-206 (1) (553 SE2d 152) (2001) (error in admitting statement without giving *Miranda* warning harmless where statement cumulative of other admissible evidence). "Moreover, any error is also rendered harmless because of the overwhelming evidence of [Osei-Owusu]'s guilt," including testimony by two police officers who witnessed the act, and Osei-Owusu's admission to having sex immediately afterward. (Citation omitted.) *McLendon v. State*, 259 Ga. 778, 780 (4) (387 SE2d 133) (1990); see also *Snyder v. State*, 238 Ga. App. 564, 567 (2) (519 SE2d 509) (1999) (overwhelming evidence,

7

including admissible statement by defendant, rendered error in admitting other statements by defendant harmless).

2. Osei-Owusu contends that the trial court abused its discretion when it refused his request to charge on the use of his in-custody statements. Specifically, he argues that the trial court should have instructed the jury to consider whether he had been read his *Miranda* rights before making any post-arrest statements.

Assuming that the trial court erred by failing to give Osei-Owusu's requested charge, any error in failing to do so was harmless in light of the evidence against him. *Kirk v. State*, 271 Ga. App. 640, 646 (4) (610 SE2d 604) (2005); see also *Woodard v. State*, 278 Ga. 827, 830 (4) (607 SE2d 592) (2005) (Citation and punctuation omitted.) ("an error is harmless if it is highly probable that the error did not contribute to the jury's verdict"). And although the trial court did not charge the jury on the *Miranda* issue, it did charge the jury that it must determine that any statement by the defendant was voluntary before it could be considered as evidence.

3. Osei-Owusu contends that the trial court abused its discretion by charging the jury on voluntary intoxication in response to a question from the jury. He argues that the instruction was not responsive to the jury's question, was not supported by the evidence and constituted harmful error.

8

During deliberations, the jury asked, "Are we to consider the defendant's capacity, impairment in determining the charge of rape?" In response, the trial court instructed the jury on voluntary intoxication as follows:

> Georgia law provides that voluntary intoxication shall not be an excuse for any criminal act. It further provides that if a person's mind when not affected by intoxicants is capable of distinguishing between right and wrong as well as of reasoning and acting rationally and the person voluntarily deprives himself of reason by consuming intoxicants and commits a criminal act while under the influence of such intoxicants, the mind is criminally responsible for such acts to the same extent as if the person were sober. Whether or not the defendant in this case was voluntarily intoxicated at or during the time alleged in this bill of indictment is a matter solely for you, the jury, to determine.

The jury responded that the instruction answered their question and asked for it in writing.

> Generally, the scope and content of additional jury instructions are left to the sound discretion of the trial court, and the trial court may address only the jury's request on a particular point or give additional instructions. Moreover, where there is any evidence, however slight, upon a particular point, it is not error to charge the law in relation to that issue.

9

(Citations and punctuation omitted.) *Cochran v. State*, 276 Ga. App. 840 (625 SE2d 92) (2005). There was evidence that Osei-Owusu was intoxicated – Officer Brown testified that he smelled alcohol on him and that he stumbled and needed assistance walking approximately 150 feet to the other side of the club. It was therefore not error to charge on voluntary intoxication. See *Griffin v. State*, 241 Ga. App. 783, 786 (4) (d) (527 SE2d 577) (1999).

Osei-Owusu argues that the sua sponte instruction was harmful because it was made after closing arguments and his counsel was not given the opportunity to address it. At trial, Osei-Owusu's counsel objected to the court's instruction and stated that the issue "may not have been fully vetted out in my closing argument." The solution in this situation is for the affected party to request the right to argue the matter contained in the instruction to the jury. *Cochran*, 276 Ga. App. at 841. Because Osei-Owusu "did not ask to reargue the case, and the trial court did not absolutely deny him that right, there was no reversible error." (Footnote omitted.) Id.

4. Osei-Owusu contends that his trial counsel was ineffective for failing to object to an officer's testimony that he believed a rape had occurred. He argues that the deficient performance prejudiced the outcome of the case because the evidence against him was not overwhelming, given the victim's intoxication and inability to

10

remember the incident until after her memory was tainted by the police officer's version of events.

> The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U.S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency. If the defendant cannot satisfy either of the two prongs of the Strickland test, his ineffective assistance claim fails.

(Citation and punctuation omitted.) *Philpot v. State*, 311 Ga. App. 486, 488-489 (3) (716 SE2d 551) (2011). On appeal of an ineffective assistance claim, "we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, while we independently apply the legal principles to the facts." (Citation and punctuation omitted.) Id.

Osei-Owusu was represented at trial by counsel with 15 years of experience in criminal defense. At the motion for new trial hearing, trial counsel said that it was a mistake not to object to the officer's testimony that he thought a rape had occurred. The specific testimony complained of came from Officer Brown when he stated that he took photographs at the scene to gather information for "what I thought was a rape

11

at the time;" that he collected the victim's panties because he "thought that a rape had occurred;" that the victim "didn't know she was raped" when he talked to her at the scene; and that when the victim told him she did not know Osei-Owusu, that was when "the light came on and I thought that she was being raped." When Officer Brown testified that "I realized that the victim had been raped," trial counsel objected, stating that the officer could say that he believed it should be investigated, but that it was a decision for the jury. The objection was sustained.

Referring to an incident as rape states a conclusion that is usually to be determined by the jury. *Machuca v. State*, 279 Ga. App. 231, 235 (2) (630 SE2d 828) (2006). "For that reason, the unrestricted use of the word "rape" may be objectionable, absent a jury instruction that the question of whether or not any rape occurred was one for its determination." (Footnote omitted.) Id. Here, the trial court instructed the jury that Osei-Owusu was presumed innocent and that the State bore the burden of proving all elements of the offense of rape beyond a reasonable doubt. The court also instructed that

> lack of consent on the part of the alleged victim is an essential element of the crime of rape, and the burden of proof is on the State to show a lack of consent on the part of the alleged female victim beyond a

reasonable doubt. If the State fails to prove such beyond a reasonable doubt, then you should acquit the defendant.

Although trial counsel could have raised repeated objections, where, as here, "the trial court clearly framed the distinction between consensual sexual activity and the crime of rape," the trial court's finding that Osei-Owusu's trial counsel was not ineffective is not clearly erroneous. *Machuca*, 279 Ga. App. at 236 (2); see also *Dew v. State*, 292 Ga. App. 631, 634 (2) (665 SE2d 715) (2008) (where jury was instructed that question of whether defendant raped victim was for their determination, trial court did not err in denying motion in limine to prohibit prosecution from using term "rape"). Furthermore, given the overwhelming evidence against him, Osei-Owusu cannot show a reasonable probability that the outcome of the proceedings would have been different if his trial counsel had objected to every use of the word "rape." See *Lakes v. State*, 314 Ga. App. 10, 16 (5) (e) (722 SE2d 859) (2012).

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*