J-S57012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOYCE SCHOFIELD | : | |
| | : | |
| Appellant | : | No. 3347 EDA 2017 |

Appeal from the PCRA Order October 10, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0710721-1999

BEFORE: PANELLA, J., PLATT*, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, J. **FILED JANUARY 28, 2019**

Joyce Schofield appeals from the order dismissing her timely petition pursuant to the Post Conviction Relief Act ("PCRA"). She alleged in her petition that her trial counsel was ineffective when he raised inherently contradictory defenses in his opening statement to the jury, and in failing to request the application of New Jersey law regarding the validity of her confession. We conclude the PCRA court properly dismissed her petition without a hearing. We therefore affirm.

A jury convicted Schofield of hiring Steven Davis to set fire to a building in an attempt to kill her boyfriend, Ronald Bridges, and his mother, Margaret.

_____

* Retired Senior Judge assigned to the Superior Court.

However, the fire killed three-year-old Tamir Johnson rather than Schofield's intended targets. Two other residents of the building were severely burned.

During his opening statement, Schofield's trial counsel told the jury he would present evidence supporting two defenses. First, he indicated he would present facts and expert opinion capable of establishing that Schofield lacked the capacity to form a specific intent to kill Ronald and Margaret Bridges. Second, he stated he would present evidence Schofield had renounced her participation in the crime by instructing Davis to call off the murder before it happened.

At trial, Schofield conceded she had contracted with Davis to have him kill Ronald and Margaret. She further testified that while she was on vacation, she decided it would be better if Davis did not kill Ronald and Margaret. Pursuant to this change of heart, she called Davis and told him he could perform odd jobs for her rather than killing the Bridges.

After the end of Schofield's testimony, the trial court ruled that Schofield could not present both a lack of capacity and a renunciation defense. The court found the two defenses inherently contradictory. It further ruled Schofield could not present her expert psychological witness, as her own testimony rendered her lack of capacity defense inapplicable. The jury found her guilty of murder, attempted murder, arson, criminal conspiracy, and aggravated assault.

On direct appeal, this Court deemed Schofield's issues waived, due to counsel's failure to comply with Pa.R.A.P. 1925(b). *See Commonwealth v. Schofield*, No. 519 EDA 2001 (Pa. Super. filed October 28, 2003) (unpublished memorandum). The Supreme Court of Pennsylvania affirmed our decision. *See Commonwealth v. Schofield*, 888 A.2d 771 (Pa. 2005).

Schofield's direct appeal rights were restored *nunc pro tunc* through a successful PCRA petition. This Court subsequently affirmed her judgment of sentence, and the Supreme Court of Pennsylvania denied her petition for review.

She then filed a timely PCRA petition. *See Commonwealth v. Ranger*, 196 A.3d 237, 241 (Pa. Super. 2018) ("The one-year time limit for filing a timely PCRA [petition] is … triggered … [by] the exhaustion of a petitioner's direct appellate rights"). The PCRA court appointed counsel, who filed an amended petition. The PCRA court subsequently dismissed the amended petition without a hearing, and Schofield filed this timely appeal.

We proceed by determining whether the PCRA court's factual findings are supported by the record. *See Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012). In doing so, we read the record in the light most favorable to the prevailing party. *See id*. If this review reveals support for the PCRA court's credibility determinations and other factual findings, we may not disturb them. *See id*. We, however, "afford no such deference to its legal conclusions." *Id*., at 1194 (citations omitted).

Schofield's first substantive issue is her claim that trial counsel was ineffective in presenting inherently contradictory defenses during his opening statement. We presume counsel's effectiveness, and an appellant bears the burden of proving otherwise. **See Commonwealth v. Brown**, 161 A.3d 960, 965 (Pa. Super. 2017). To establish ineffectiveness of counsel, a PCRA petitioner must plead and prove the following: his underlying legal claim has arguable merit; counsel's actions lacked any reasonable basis; and counsel's actions prejudiced the petitioner. **See Commonwealth v. Spotz**, 18 A.3d 244, 260 (Pa. 2011). "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." **Commonwealth v. Stewart**, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*) (citations and internal quotation marks omitted). Failure to satisfy any prong of the ineffectiveness test requires dismissal of the claim. **See Commonwealth v. O'Bidos**, 849 A.2d 243, 249 (Pa. Super. 2004).

Schofield argues trial counsel erred in telling the jury he would present evidence to support two contradictory defenses. The first defense was a lack of capacity to form the specific intent to kill, commonly known as a diminished capacity defense. A defense of diminished capacity is a limited defense. **See Commonwealth v. Legg**, 711 A.2d 430, 433 (Pa. 1998). The defendant does not deny all criminal culpability, but rather argues for mitigation of her

culpability from first degree to third degree murder. *See id*. To support this defense, the defendant must present evidence capable of establishing she lacked the cognitive ability to deliberate over and premeditate her culpable actions. *See id*. In his opening statement, trial counsel indicated he would present the expert testimony of psychiatrist Gary Glass, M.D., to support this defense. *See* N.T., Jury Trial, 7/13/2000, at 58-60.

The second defense, which Schofield now argues was inherently contradictory to the diminished capacity defense, was that she renounced her participation in the conspiracy to kill the Bridgeses. While Schofield did not set the fatal fire, she was responsible for all crimes committed in the furtherance of the objective of the agreement she reached with Davis to kill the Bridgeses. *See Commonwealth v. Figueroa*, 859 A.2d 793, 798-799 (Pa. Super. 2004). For a conspirator to escape this liability through renunciation of the conspiracy, she must abandon the conspiracy "before the commission of the crime becomes so imminent that avoidance is out of the question." *Commonwealth v. Roux*, 350 A.2d 867, 871 (Pa. 1976) (citation omitted). In his opening statement, trial counsel told the jury he would present evidence Schofield had told Davis to cancel the attempt to kill the Bridgeses. *See* N.T., Jury Trial, 7/13/00, at 44-45.

Essentially, trial counsel presented a twofold defense. First, that Schofield lacked the capacity to form the specific intent to kill at the time she

contracted with Davis to kill the Bridgeses. Second, that after she returned from a vacation, she felt better and told Davis to cancel the assassination.

After Schofield testified, the Commonwealth moved to have Dr. Glass's testimony precluded. The Commonwealth argued that since Schofield testified she withdrew from the conspiracy to kill the Bridgeses, she was precluded from presenting the defense of diminished capacity. The trial court agreed with the Commonwealth and precluded the presentation of Dr. Glass's testimony and counsel's arguments on diminished capacity.

We conclude Schofield has not established she suffered prejudice from counsel's presentation of alternative defenses. "Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." **Stewart**, 84 A.3d at 707 (citations and internal quotation marks omitted).

Here, Schofield testified she contracted with Davis to kill both Ronald Bridges and his mother. **See** N.T., Jury Trial, 7/20/2000, at 40, 42-43. And Schofield has never challenged the Commonwealth's assertion that Davis set fire to the residence in an attempt to kill Margaret Bridges. As noted, she intended to present two defenses at trial: a lack of specific intent to kill, and renunciation of the conspiracy before the fire was set.

Schofield has not convinced us that any error in trial counsel's opening statement so undermined the truth-determining process that the verdict of

guilty of first degree murder was completely unreliable. Additionally, we cannot conclude that the jury's verdict would have been different had counsel not broached the issue of diminished capacity in his opening statement. The diminished capacity defense was legally and factually independent from the renunciation defense.

Schofield has not established that the failure to follow through on the diminished capacity argument affected the jury's consideration of the renunciation argument. She cites to a case from a foreign jurisdiction, Georgia, to establish her claim of prejudice. *See Ross v. Kemp*, 393 S.E.2d 244 (Ga. 1990).

However, even if we accept *Ross* as persuasive authority, it does not explicitly support a finding of prejudice in this case. *See id*., at 245. The *Ross* court relied on at least two circumstances not present here. First, that the defendant, Ross, was represented by two separate attorneys at trial. *See id*. Each attorney presented a mutually conflicting theory of defense at trial. *See id*. Thus, it was clear that the defense team had not agreed to a single, coherent theory of defense. *See id*. ("Each attorney seemingly acted as lead counsel without informing the other of the direction the defense was to take.")

Further, neither theory of defense had been properly prepared. One counselor fell asleep during the trial. *See id*. The other attorney did not prepare Ross for direct or cross-examination. *See id*. Ultimately, the court

rested its decision of ineffective assistance of counsel on the uninformed nature of Ross's decision to testify in his own defense:

> While the presentation of inconsistent defenses by one attorney may not be worthy of habeas corpus relief, (see e.g.**, Brown v. Dixon**, 891 F.2d 490 (4th Cir. 1989)), each attorney here espoused a defense at odds with that of the other, causing a discernable split within the ranks of the defense team, which prevented counsel from, among other things, effective performances of the duty to assist in the decision whether to testify in his defense.

*Id*.

Turning to the facts of this case, it is undisputed that Schofield only had one attorney at trial. **See** Appellant's Brief, at 21. Additionally, there is no argument that counsel's actions led to Schofield deciding to testify in an uninformed or unprepared fashion. Finally, under the facts of this case, we cannot conclude the jury verdict was likely to have been different if trial counsel had never broached the issue of diminished capacity. Thus, Schofield has not established a right to relief for ineffective assistance of counsel under the PCRA.

Next, Schofield contends trial counsel was ineffective in his opening statement. Schofield alleges counsel failed when he indicated he would present a psychiatric expert before ensuring that the court would allow him to present the expert's testimony. Schofield argues counsel should have ensured the admissibility of this evidence by filing motions *in limine*.

We conclude Schofield has not established she suffered prejudice from counsel's inaction. As we discussed above, we cannot conclude the jury's

verdict would have been different if counsel had avoided discussing the diminished capacity defense in his opening statement. This includes his mention of the expert witness he intended to use to support the diminished capacity defense. Schofield is due no relief on her second issue on appeal.

In her final issue, Schofield contends counsel was ineffective in failing to argue that her first confession to police should have been suppressed under New Jersey law. Schofield argues that her first confession, given while she was hospitalized in New Jersey, would have been suppressed under New Jersey law.

Generally speaking, in criminal cases, the forum state has the power to impose its own laws, so long as it has jurisdiction over the case. *See Commonwealth v. Eichinger*, 915 A.2d 1122, 1133 (Pa. 2007). However, Pennsylvania has adopted "a flexible choice of law rule which weighs the interests our sister-states may have in the transaction." *See id*. (citation omitted). This flexible rule applies even in criminal cases. *See id*.

Obviously, if there is no conflict between the laws of Pennsylvania and New Jersey, counsel was not ineffective for failing to argue New Jersey law. *See id*. ("it remains implicit in this analysis that there be a conflict between the substantive law of New Jersey and the law of Pennsylvania"). Schofield argues New Jersey law provides greater protections for hospitalized individuals when they are interviewed by the police.

"Federal and New Jersey state standards used in determining whether" a confession is voluntary "are similar." ***State v. Galloway***, 628 A.2d 735, 747 (N.J. 1993). New Jersey utilizes a totality of the circumstances test. ***See id***. So does Pennsylvania. ***See Commonwealth v. Nester***, 709 A.2d 879, 882 (Pa. 1998).

Schofield argues that several New Jersey cases held confessions to be involuntary obtained while the defendant was hospitalized. ***See State v. Pickles***, 218 A.2d 609 (N.J. 1966); ***State v. Stott***, 794 A.2d 120 (N.J. 2002); ***State v. Patton***, 826 A.2d 783 (N.J. Super. 2003). Initially, we note that the decisions in ***Stott*** and ***Patton*** were filed well after Schofield's trial in this matter. Thus, counsel cannot be found ineffective for failing to argue their applicability. ***See Commonwealth v. Gribble***, 863 A.2d 455, 464 (Pa. 2004).

In any event, these cases do not offer a bright-line rule that overrides the general applicability of the totality of the circumstances test. ***See Pickles***, 218 A.2d at 628 ("Review of the circumstances attending the taking of the incriminating statement …"); ***Stott***, 794 A.2d at 133 ("We are satisfied that no precise definition can be formulated which would apply in advance to all cases … The problem must be dealt with through a case-by-case approach in which the totality of the circumstances must be examined."); ***Patton***, 826 A.2d at 800 (To admit a confession into evidence, the State "must prove beyond a reasonable doubt that the suspect's waiver was … voluntary in light of all the circumstances.").

Thus, Schofield has failed to establish there was a conflict between New Jersey and Pennsylvania law on the issue of her confession in a New Jersey hospital. There is no arguable merit to the claim counsel was ineffective for failing to argue such a difference in an attempt to suppress the confession. Schofield is due no relief on her final issue.

As we conclude Schofield has not established an error on the part of the PCRA court, we affirm the order dismissing her PCRA petition.

Order affirmed.

Judge Strassburger concurs in the result.

Judge Platt did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/28/19