A04A2157. TURMAN v. THE STATE.
(613 SE2d 126)

BARNES, Judge.

A jury convicted Charlie Turman of aggravated assault, aggravated battery, and possession of a firearm during the commission of a crime. Turman appeals, arguing, among other things, that the trial court erred in ordering his case to trial while his retained counsel was hospitalized. Because the trial court denied Turman's right to retained counsel of his choosing, we reverse.

---

[6] *Follmer v. Perry*, 229 Ga. App. 257, 260 (1) (493 SE2d 631) (1997).

Turman was arrested on January 4, 2001, indicted later that month, and released on bond February 9, 2001. He was arraigned on February 22, 2001, and the trial court told him to hire a lawyer within ten days. At a calendar call three weeks later, on March 16, 2001, the trial court told him to get a lawyer "real quick." At a second calendar call two weeks later, on April 2, 2001, the court told him to get in touch with the lawyer who handled his bond motions and return in two days for trial. On April 4, 2001, Turman said he had talked to the bond lawyer, who had to be in another court that day. The trial court told him that if he had no lawyer the next time the case was called, he would have to try it himself, and when Turman said he had not had time to hire anyone, the trial court told him he had had enough time. When Turman began to explain his situation, the court cut him off and said, "No, I don't want to hear excuses, I told you to get a lawyer and you told me you were going to get a lawyer and you didn't."

Three weeks later, on April 26, 2001, the State filed a "Motion to Disclose Name of Defense Counsel," and on July 2, 2001, Turman's bond lawyer filed a letter to Turman, dated June 25, 2001, stating that if Turman did not pay the fee, the lawyer would not represent him. Meanwhile, on June 29, 2001, the trial court issued an order appointing counsel to represent Turman, pursuant to former OCGA § 17-12-11 (relating to indigent defense), to be paid by the county, which Turman was required to repay. No evidence exists in the record regarding whether Turman qualified for indigent counsel. Finally, on July 18, 2001, lawyer Smith, retained by Turman, filed a notice of appearance and several motions, including a notice of intention to raise an insanity defense, a plea of not guilty by reason of mental insanity, a special plea of incompetency to stand trial, a motion for mental evaluation, and an ex parte motion for funds to hire an independent psychiatrist.

The trial court called the case for trial on Monday, July 23, 2001. When asked if he were ready, Turman responded, "I guess so but I don't see my attorney." The trial court told him his court-appointed attorney was "sitting right there" and again asked if he were ready to go to trial. The appointed attorney said he understood that Turman hired lawyer Smith the week before. The State commented that Smith had filed a motion, and the trial court erroneously stated that Smith had filed an unsigned motion but no appearance. The appointed counsel explained that he had not yet spoken to Turman because Turman had hired Smith, and the court said "it is Mr. Turman who hasn't been staying in contact with the Court or his attorney." It directed Turman and appointed counsel to return that afternoon ready for trial.

At 1:00 that afternoon court reconvened, and the appointed counsel said he understood that lawyer Smith had made an appearance on behalf of Turman. The trial court then noted that the appearance was filed on July 17, 2001, about a week previously. Appointed counsel then stated for the record that, while he was appointed to represent Turman a few weeks earlier, he had not discussed the case with him because Turman told him he was hiring a private lawyer. Further, Smith was in the hospital and Smith's associate was in trial in another county. After the State recited the procedural history of the case as outlined above, Turman stated that he had sought an attorney when he was before the previous trial court in this matter, "and he was working on it but I hadn't paid him, but I had sought an attorney."

Appointed counsel said that the incident had taken place the previous January, and so was not that old, and that his concern was that "Rule 4.2 of the State Bar of Georgia provides that a lawyer can't talk to someone else's, appointed by counsel without the other lawyer, the record attorney's permission, . . . and I haven't prepared for this case on the assumption that Mr. Smith would be here." The court responded, "Mr. Turman has been given every opportunity we could possibly give him to get a lawyer," to which Turman replied, "I had to get my funds up and I finally got the funds up. I had to get the funds up. . . . Judge, I am a poor man and money is not easy to come up with."

When asked if they could see if lawyer Smith would be out of the hospital and able to try the case later that week, the trial court noted that Smith's secretary had faxed a doctor's note to the State and the court which showed that the lawyer had been at the emergency room with gastroenteritis the day before, but that when the note was prepared, Smith had not been admitted to the hospital, and therefore the court did not know for a fact that Smith was hospitalized the day of trial. After determining that jurors would be available later that week, the trial court ordered the appointed lawyer to return then and be ready to try the case.

On Wednesday, July 25, 2001, the trial court again called the case for trial. When the court asked Turman if he had talked to his appointed attorney or refused to talk to him, Turman said he had not refused to talk, but that he had hired a lawyer who had been taken to Emory Hospital, and he understood that the court had a letter to that effect. The following exchange then took place:

> THE COURT: Yes, sir, I have all of that. He is in the hospital but, Mr. Turman, I have told you five different times to get you an attorney and you have waited until three or four days before trial to get one. I have told you, appointed the public defender for you, Judge Bailey, you told him that you were

going to hire your own attorney and [your bond lawyer] got three continuances for you. You showed up in court last time without a lawyer, two weeks ago and Judge Bailey appointed a lawyer for you and then four days before trial we get a fax from a lawyer saying that he now represents you.

THE DEFENDANT: Well, I had to get myself financially able to hire a lawyer.

THE COURT: But you told the Court that you were going to get a lawyer and you never did. . . . You haven't refused to talk to your attorney, this attorney right here.

THE DEFENDANT: No sir, we haven't discussed anything. I told him that I had hired me a lawyer and I really didn't need a public defender.

THE COURT: I understand that but have you refused to discuss the case with [appointed counsel]?

THE DEFENDANT: I don't think we have gone into anything about what happened.

THE COURT: But have you personally refused to discuss the case with him is all that I am asking you?

THE DEFENDANT: What is the meaning of refused?

THE COURT: Well, did you tell him that you didn't want to talk about the case with him?

THE DEFENDANT: I don't remember saying that I didn't want to talk to him about the case. I could have but I don't remember saying that. No sir, I didn't talk with him.

THE COURT: [Appointed counsel], have you got anything to say?

[APPOINTED COUNSEL]: Yes sir. Your Honor, first of all I don't feel right trying another lawyer's case and I don't want to do it because I wouldn't want another lawyer to do that with one of my cases. I understand that Mr. Smith is in the hospital. . . . Also, your Honor, I am not prepared to try this case and I wouldn't know the first thing to ask a single witness.

Appointed counsel confirmed when asked that he had been appointed two or three weeks ago but had not discussed the case with Turman because he had retained counsel. While he had not studied the file, counsel noted that he understood "that there is a psychological motion and a motion for —." The trial court cut him off with the following statement:

And that was not timely filed, this Court received that last

Friday [sic]¹ and this case was to go to trial on Monday and it was not timely filed. Mr. Turman and I have had more conversations about this case and continuances and getting lawyers and there is nothing wrong with Mr. Turman in this Court's opinion. Monday I continued it and I told you to get ready for trial.

Although appointed counsel explained that on Monday he thought that a lawyer from Smith's office would be there to try the case, the court was determined to proceed anyway. After the State announced ready, appointed counsel announced not ready and said,

I would like to state on the record that if I am forced to go to trial that my representation would be grossly unfair. I don't know the first thing to ask a single witness. I have a witness list and know who they are but I don't know anything about the case. . . . It is also my contention that Mr. Turman doesn't qualify for court appointed counsel and he has hired two private attorneys and under the circumstances as County Attorney for Elbert County I would object to the Court ordering the County to pay for a court appointed attorney for someone who can afford an attorney.

The court ordered appointed counsel to proceed. After jury selection and before the *Jackson-Denno* hearing, appointed counsel renewed his objection "and also the motion for psychological evaluation I would renew as well." After the hearing, counsel renewed his objection "specifically as to the psychological evaluation and also as to my unpreparedness."

When the victim testified, the trial court overruled appointed counsel's objection to the introduction of a 911 tape because he had no notice of the tape's existence until the day before. The State presented five witnesses: the victim, the 911 operator, the chief deputy sheriff to whom Turman turned himself in, and two investigators. After the State rested, the trial court said it understood that Turman had chosen not to testify and asked if he understood that he had the right to testify or not. The following exchange took place.

THE DEFENDANT: What it is right now I don't know what to do for the reason I don't have the counsel that I am supposed to have.

---

¹ The motions were filed the previous Wednesday, not the previous Friday.

THE COURT: No, you have got an attorney, a Court appointed attorney.

THE DEFENDANT: He does not know what is going on just like me, really.

THE COURT: But you had plenty of time.

THE DEFENDANT: I had some time but I came up here to calendar call once and came to court once.

THE COURT: Well, you seem to know the procedure pretty well and Judge Bailey told you to get a lawyer and you didn't so he appointed [counsel] to represent you that day, if you remember.

THE DEFENDANT: He told me to get a lawyer by the next term of court.

THE COURT: And they sent you a letter and you got the letter?

THE DEFENDANT: I did and he can't be here with me today but I have gotten a lawyer.

THE COURT: Well, I wish you had gotten a lawyer sooner like you were told to.

THE DEFENDANT: I think it would be better for me not to say anything now until I can talk with him and get that straightened out. . . . You know by me not saying anything people can just get up and say anything they want to about me and you could give me life. So I really don't have any defense so I can just set up and don't say anything and have got no attorney and they could just say he is guilty.

THE COURT: You have got an attorney right there. That is your lawyer right there appointed by the Court.

THE DEFENDANT: I understand that but we have not went over nothing.

THE COURT: Well, why didn't you get in touch with him?

THE DEFENDANT: After I had hired a lawyer I didn't think it was no need.

After additional exchanges regarding when Turman hired his lawyer and when that lawyer filed papers with the court, the trial court said, "Okay, but you know you have the right to testify." Turman responded, "You say that I have," and the court said, "I am telling you that you have got the right to testify if you want to and you can either testify or not testify, it is up to you. Your attorney has told me that he is not planning on putting you up. Did you talk to your attorney about your right to testify?" Turman said, "He advised me," and the court completed the thought, saying, "Not to, okay, that's good enough."

The defense presented no evidence, and the jury returned a guilty verdict on all three counts in twenty-five minutes. The trial

court immediately sentenced Turman to twenty years for aggravated battery, twenty years for aggravated assault, and five years for the firearms charge. Turman moved for a new trial on August 2, 2001. The trial apparently was not transcribed for more than two years, and Turman finally filed an amended motion for new trial on October 6, 2003. More than six months passed before the trial court ruled on the motion in an order filed April 20, 2004, that did not specifically state which motion the court was denying. The court amended the final paragraph in a second order filed on July 1, 2004, almost three years after Turman was convicted and eight months after he filed his amended motion for new trial.

1. On appeal, Turman argues that the trial court erred in denying his right to counsel by ordering the case to trial while Turman's retained counsel was hospitalized, denying his motion for a continuance, and in denying his competency motions as untimely. In response, the State outlines in detail the procedural history of the case and asserts that Turman should have cooperated with the lawyer that the court appointed for him, who was present when the case was called for trial.

Our State constitution provides that "[e]very person charged with an offense against the laws of this state shall have the privilege and benefit of counsel." Ga. Const., Art. I, Sec. I, Par. XIV (2004). The Supreme Court of Georgia has construed this provision to

> confer upon every person indicted for crime a most valuable and important constitutional right, which entitles him to be defended by counsel of his own selection whenever he is able and willing to employ an attorney and uses *reasonable diligence* to obtain his services. No person meeting these requirements should be deprived of his right to be represented by counsel chosen by himself, or forced to trial with the assistance only of counsel appointed for him by the court.

(Citations and punctuation omitted.) *Shaw v. State*, 251 Ga. 109, 111 (303 SE2d 448) (1983).

Even though the trial court in this case forced Turman to trial with the "appointed lawyer" representing him, the lawyer was actually appointed to represent Turman as retained counsel, because the order of appointment also provided that Turman had to repay the county for the lawyer's services. The choice thus became which of the two retained lawyers should represent him, and aside from the fact that the appointed retained lawyer was completely unprepared, Turman had a right to the retained counsel of his choice.

> The provision in the "bill of rights" declaring that "every person charged with an offense against the laws of this State shall have the privilege and benefit of counsel" confers upon every person indicted for crime a most valuable and important constitutional right, and entitles him to be defended by counsel of his own selection whenever he is able and willing to employ an attorney and uses reasonable diligence to obtain his services. No person meeting these requirements should be deprived of his right to be represented by counsel chosen by himself, or forced to trial with the assistance only of counsel appointed for him by the court.

*Delk v. State*, 100 Ga. 61 (27 SE 152) (1896). "There can be no greater safeguard than the presence of that attorney selected by the defendant as leading counsel who is prepared for the trial and upon whom the defendant relies to manage and conduct his trial." (Citations omitted.) *Long v. State*, 119 Ga. App. 82, 83 (1) (166 SE2d 365) (1969).

Under the circumstances of this case, the trial judge had a duty to delay the proceedings long enough to ascertain whether Smith's absence was attributable to reasons beyond Turman's control. The court did not attempt such an inquiry, instead stating that it had appointed a lawyer to represent Turman, and because that lawyer was present, Turman was adequately represented. The issue is *not* whether Turman was diligent in procuring his lawyer, because he had done so, and that lawyer, Smith, had prepared for trial but was absent because of circumstances beyond Turman's control. "This action by the trial court, and the resulting denial of [Turman's] request for a continuance, was erroneous. See *Long v. State*, [supra,] 119 Ga. App. 82; *Campbell v. State*, 128 Ga. App. 74 (195 SE2d 664) (1973)." *Shaw v. State*, supra, 251 Ga. at 112.

2. In light of our holding on Turman's right to counsel issue, we need not reach the issue of whether the trial court erred in denying Turman's motion for a continuance pursuant to OCGA § 17-8-24. We note, however that "it . . . appears that the continuance was denied because the defendant had stated that he would retain an attorney and then had not done so" soon enough. *Dowda v. State*, 119 Ga. App. 124, 127 (2) (166 SE2d 404) (1969). The court and the State characterized Turman's explanations for the delay as "excuses," without taking into account whether those explanations were valid. No evidence disputes Turman's representations that he was a poor man and had to "get his funds together." Was his explanation for the delay in hiring counsel "a misrepresentation? Only if defendant had no intention to do so from the outset or no effort was made. It affirma-

tively appears that the defendant did make such an effort and, further, that the court and the [district attorney] were aware of same." Id.

3. In view of our disposition of the case on the grounds stated in Division 1, Turman's complaint regarding the denial of his continuance and his competency motion are moot.

*Judgment reversed. Blackburn, P. J., and Mikell, J., concur in judgment only.*

DECIDED MARCH 11, 2005 —
RECONSIDERATION DENIED MARCH 30, 2005.

*James W. Smith*, for appellant.
*Robert W. Lavender, District Attorney, Leon Jourolmon, Assistant District Attorney*, for appellee.