A09A1495. HARRISON v. THE STATE.
(681 SE2d 252)

ELLINGTON, Judge.

A Clarke County jury found Jason Harrison guilty of burglary, OCGA § 16-7-1; and possession of a firearm by a convicted felon, OCGA § 16-11-131 (b). Harrison appeals from the denial of his motion for new trial, contending that his trial counsel was ineffective and that the trial court erred in admitting statements of a co-conspirator and evidence of an impermissibly suggestive photographic lineup. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record reveals the following. During the morning of December 20, 2004, Harrison and two accomplices, Teddy Sewell and Robert Summers, burglarized a home in Clarke County. The homeowner returned home at about 11:30 a.m. and saw three black males loading his belongings into the trunk of a blue Ford Taurus. When the burglars spotted the homeowner, they got in the Taurus and fled. As the homeowner called 911 on his cell phone to report the burglary, he followed the burglars to a subdivision a few miles away. When they got to the subdivision, the burglars stopped their car. Two of the men got out and ran around to the trunk of the car, took firearms from the trunk, and aimed them at the homeowner. Recognizing his own loaded weapons in the hands of the burglars, the homeowner backed away. He saw the two burglars who had gotten out of the car flee on foot. The burglar who remained in the car attempted to drive away just as the police were arriving. His exit blocked by a patrol car, the driver bolted from the car, but was quickly caught. The homeowner described the two men who got away to the police. One wore a gray jumpsuit; the other, black pants and a black shirt.

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The driver, Robert Summers, told the police that Teddy Sewell and a man named Jason had been with him. The police put together a photographic lineup and asked Summers if the man he knew as Jason was one of the six men depicted in the photographic array. Summers circled the photograph of Jason Harrison.

The police recovered a rifle and two pairs of gloves from the woods where the burglars fled. They found another pair of gloves and a hat with an Allied Paving Construction logo on it inside the car. Another hat with the same logo was found outside the burgled home. The hats did not belong to the homeowner. The homeowner identified his belongings — weapons, art prints, electronics, etc. — in the trunk of the car, and he testified that they were taken from his home without permission. The homeowner also testified that his house had been ransacked, and several items had also been moved from his home and left outside.

Sewell and Summers, both of whom had pled guilty to the burglary, testified at trial that Harrison participated in the burglary. Summers testified that Sewell, who was driving a blue Taurus, picked him up that morning. They picked up Harrison shortly thereafter. The three went to a Dollar General Store, bought three pairs of gloves, and then drove to the victim's residence. All three went inside the home, took things, and loaded them in the trunk of the car. Sewell and Summers both recounted their flight from the home, the homeowner's pursuit, and the arrival of the police. Summers said that both Sewell and Harrison got out of the car and went to the trunk, and that they fled on foot when the police arrived.

Sewell testified that he was wearing all black clothing that day. Summers testified that Harrison was wearing a gray jumpsuit. The police confirmed that gloves like those recovered were indeed sold by the Dollar General Store. The police also adduced evidence that Sewell and Summers had lived together for several years and were like brothers, and that Harrison is Sewell's cousin. An employee of Allied Paving testified that Harrison had worked for the company briefly and that the company distributes logo hats to their employees. She testified that neither Sewell nor Summers had been employed by Allied Paving.

Finally, the State introduced evidence of a similar transaction. On October 12, 1999, Harrison was caught burglarizing a home in Clarke County. He had backed his car up to the residence and was loading items into the trunk when a man saw him and called the police. The police caught Harrison shortly after he came out of the house with the keys to his car in his hand.

1. Harrison contends the trial court erred in admitting into evidence through the testifying police officer the hearsay statements that Summers gave to the police shortly after his capture, statements

YALE LAW LIBRARY

implicating Sewell and Harrison in the burglary. Harrison argues that, because the conspiracy had ended when Summers gave those statements, Summers' hearsay statements were not admissible against his co-conspirators. OCGA § 24-3-52 ("The confession of one joint offender or conspirator made after the enterprise is ended shall be admissible only against himself."); *Crowder v. State*, 237 Ga. 141, 152 (227 SE2d 230) (1976) ("'[A] confession made to police by a conspirator (in which other conspirators are identified and their participation is described) is not made during the pendency of the criminal project (i.e., is not made during the concealment phase of the conspiracy) but is made after the enterprise is ended.'").

While Harrison's recitation of the law is correct, the rule he cites does not apply given the facts of this case. It is also well settled that where the co-conspirator testifies at trial and is subject to cross-examination, OCGA § 24-3-52 has no application. *Brown v. State*, 266 Ga. 633, 635 (2) (469 SE2d 186) (1996) ("[The Supreme Court of Georgia] and the Court of Appeals have repeatedly held that where the co-conspirator testifies at trial and is subject to cross-examination, the concerns of § 24-3-52 are satisfied and the Code section has no application.") (footnote omitted). Because Summers testified under oath at trial and was subject to cross-examination, the trial court did not err in admitting his statements. Id.

2. Harrison contends the trial court erred in admitting evidence that Summers picked his picture out of a photographic lineup, arguing that the lineup was unduly suggestive because Harrison was wearing a distinctive Allied Paving t-shirt.

> Convictions based on a pretrial identification by photograph and a subsequent identification at trial will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Neil v. Biggers*, 409 U. S. 188, 196 (93 SC 375, 34 LE2d 401) (1972); see *Miller v. State*, 270 Ga. 741 (2) (512 SE2d 272) (1999). A court need not consider whether there was a substantial likelihood of misidentification if it finds that the identification procedure was not impermissibly suggestive. Id. An identification procedure becomes impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, "This is our suspect." Id. at 743 (2).

(Citation and punctuation omitted.) *Williams v. State*, 272 Ga. 828-829 (2) (537 SE2d 39) (2000).

In this case, the detective assembling the array used a computer database to choose photographs of people with similar characteristics, including race, age, height, weight, and general build. Five of the six men, including Harrison, wore white t-shirts. The detective did nothing to suggest which person Summers should pick. Further, when Summers viewed the lineup, he did not know that Harrison worked for Allied Paving. Finally, Summers was not a victim who had only a brief moment to view an assailant. He was an accomplice who had spent considerable time with the person he was identifying. Under the circumstances, we cannot say that the fact that Harrison was wearing an Allied Paving shirt created a substantial likelihood of misidentification. See *Williams v. State*, 275 Ga. 622, 623-624 (2) (571 SE2d 385) (2002).

3. Harrison contends that, under the circumstances, he was constructively denied the right to counsel such that his attorney's ineffectiveness should be presumed. In support of his argument he asserts that the relationship between himself, his attorney, and the trial court was so strained that it was as if he had no counsel at all. He also contends that the "most notable" evidence of his counsel's ineffectiveness was his failure to have the Allied Paving hats tested for DNA evidence, which he contends would have proven that they were not his.

Ordinarily, to prove ineffective assistance, Harrison would be required to show that his trial counsel's performance was deficient and that this deficient performance prejudiced his defense. *Ellison v. State*, 242 Ga. App. 636, 638 (7) (530 SE2d 524) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). And the trial court's determination with respect to counsel's effectiveness under this test will be upheld on appeal unless clearly erroneous. *Jackson v. State*, 209 Ga. App. 53, 56 (7) (432 SE2d 649) (1993). However,

> [i]n *Strickland*, the Supreme Court identified three instances in which the defendant would be relieved of his burden to establish prejudice stemming from counsel's errors: (1) an actual or constructive denial of counsel, (2) government interference with defense counsel, and (3) counsel that labors under an actual conflict of interest that adversely affects his performance.

(Footnote omitted.) *State v. Heath*, 277 Ga. 337, 338 (588 SE2d 738) (2003).

Harrison baldly asserts that he was constructively denied counsel because of the strained relationships among counsel, Harrison, and the trial court. He does not elaborate on this, other than to say

it was "evident." He notes, however, that if counsel had tested the Allied Paving hats for DNA, the test results would have proven the hats were not his.

> In *Strickland's* companion case, *United States v. Cronic*, [466 U. S. 648 (104 SC 2039, 80 LE2d 657) (1984)], the Court considered the circumstances sufficient to show a constructive denial of counsel. If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then prejudice may be presumed. Prejudice may also be presumed if the circumstances surrounding the trial render it practically impossible for even competent counsel to provide effective assistance. Whether a court may presume prejudice turns on the magnitude of the deprivation of the right to effective assistance of counsel.

(Punctuation and footnotes omitted.) *State v. Heath*, 277 Ga. at 338-339.

We have reviewed the entire record, and, if there was any strain among counsel, his client, and the court, it was not evident. The record reveals that counsel thoroughly cross-examined each of the witnesses against Harrison, made appropriate objections, and attempted to keep similar transaction and pretrial identification evidence from the jury. Further, Harrison was acquitted of two of the crimes charged: aggravated assault and possession of a firearm during the commission of a crime. Finally, even if Harrison had been able to prove that his DNA was not on the Allied Paving hats, that evidence would not have undermined the evidentiary value of the hats. He may have worn the hats without leaving any recoverable DNA, he may have obtained them from his employer and given them to his accomplices, or he may not have worn them at all. The evidence adduced would still show that Harrison worked for Allied Paving, that Allied Paving gave its employees hats, and that Allied Paving hats were recovered from the burgled premises and the getaway car. Thus, even had Harrison's attorney proved that his DNA was not on the hats, the hats would nevertheless link Harrison to the crimes.

Given the record before us, we cannot say that the trial court erred in denying the motion for new trial on these grounds as the record does not show such a complete failure of counsel's performance that prejudice can be presumed. See *Machuca v. State*, 279 Ga. App. 231, 236-237 (2) (630 SE2d 828) (2006). In fact, Harrison has not shown that his counsel was deficient in any respect. Consequently, we find no error.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

YALE LAW LIBRARY

DECIDED JULY 9, 2009.

*Little, Crumly & Chambliss, Samuel F. Little, Jr.*, for appellant.
*Kenneth W. Mauldin, District Attorney, Brian V. Patterson, Assistant District Attorney*, for appellee.