A11A1107. SMITH v. THE STATE.
(718 SE2d 43)

BARNES, Presiding Judge.

Jody Smith appeals his convictions for two counts of rape, two counts of robbery by force, and kidnapping. He contends he was denied due process of law because the trial court did not replace his appointed defense counsel. He also contends the trial court erred by seating one juror and excusing another, by denying his motion for a directed verdict in his competency trial, and by sentencing him as a recidivist. Smith further contends that the evidence was insufficient to establish the asportation necessary to prove the crime of kidnapping. Finding no error, we affirm the trial court.

Viewed most strongly in support of the verdict, the evidence shows that a victim testified that a man gained entrance to her apartment by telling her he was there to check the water, then forced her into a bedroom and raped her. As he was leaving, the man took a ring from the victim's finger. The victim identified Smith at trial as

the man who raped her.

Another victim testified that a man grabbed her in her apartment building's laundry room, forced her into a restroom stall, and raped her. Afterward, the assailant took a ring from the victim's finger. This victim, who is visually impaired, did not identify Smith as the man who raped her, but a maintenance man identified Smith as the man he saw in the laundry room earlier on the day of the attack.

Smith's DNA was found to match DNA obtained from both victims. The State's forensic expert testified that the odds of such a match were one in ten billion.

1. Smith contends he was denied due process of law because he had a conflict with his appointed defense counsel. Although couched initially as a Fifth Amendment violation, Smith alleges a Sixth Amendment claim. He contends that because he was abused by his African-American grandmother, he had an "unworkable relationship" with his female African-American public defender. Before trial, Smith informed the court of his dissatisfaction and asked the court to replace her. At Smith's competency trial, his public defender informed the court that Smith would not talk to her and sought permission to withdraw. The trial court deferred ruling on the request, and subsequently denied counsel's request to withdraw.

Smith points to no particular instance manifesting this conflict with his defense counsel. Instead, he argues that this is an occasion when the evidence of ineffectiveness is so pervasive that a particularized inquiry into prejudice would be "unguided speculation," citing *Ross v. Kemp*, 260 Ga. 312, 315 (393 SE2d 244) (1990). The full quotation from *Ross*, however, demonstrates why this rule is inapplicable here:

> The presentation of a fractured defense, and the placement of petitioner on the stand with no preparation whatsoever in a trial in which his life hung in the balance is evidence of ineffectiveness so pervasive that a particularized inquiry into prejudice would be "unguided speculation."

(Citation and punctuation omitted.) Id. No such evidence of ineffectiveness exists in this appeal.

Further, "[t]he circumstances under which a court will presume prejudice are extremely limited," *Owens v. State*, 269 Ga. 887, 888 (2) (a) (506 SE2d 860) (1998), and apply "in only a narrow range of circumstances." *State v. Heath*, 277 Ga. 337 (588 SE2d 738) (2003). Our Supreme Court has identified only three instances in which a defendant is authorized to rely upon a presumption of ineffective prejudice: "(1) an actual or constructive denial of counsel, (2)

government interference with defense counsel, and (3) counsel [who] labors under an actual conflict of interest that adversely affects his performance." (Citation omitted.) Id. at 338. Only the first instance could possibly apply here, but Smith was not actually denied counsel, and constructive denial is only present when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. Id. To meet this test, the "attorney's failure must be complete" and must occur throughout the proceeding, not merely at specific points. *Bell v. Cone*, 535 U. S. 685, 697 (II) (122 SC 1843, 152 LE2d 914) (2002). This is not a case in which "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing," and thus Smith was not constructively denied counsel. *Turpin v. Curtis*, 278 Ga. 698, 699 (1) (606 SE2d 244) (2004).

Consequently, as Smith has made no showing of deficient performance by his counsel and has not even attempted to show prejudice, he has not demonstrated either a Sixth Amendment or Fifth Amendment violation. This enumeration of error is without merit.

2. Smith alleges the trial court erred by denying his motion for a directed verdict in his competency trial. Competency hearings are in the nature of a civil proceeding with the defendant bearing the burden of proof:

> OCGA § 16-2-3 establishes the presumption that a person is mentally competent to stand trial. OCGA § 17-7-130 (a) permits a criminal defendant to procure review of mental competency by properly alleging mental incompetency to stand trial. Once alleged, the court is required to conduct a trial whereby a special jury determines the defendant's mental competency. We have previously held that an OCGA § 17-7-130 special jury trial proceeding to determine competency is in the nature of a "civil proceeding" wherein the defendant bears the higher burden of persuading the jury by a preponderance of the evidence he is mentally incompetent.

(Citation and punctuation omitted.) *Sims v. State*, 279 Ga. 390, 390-391 (1) (614 SE2d 73) (2005). A directed verdict is authorized only when there is no conflict in the evidence on any material issue and, with all reasonable deductions construed in favor of the nonmoving party, the evidence demands a certain verdict. OCGA § 9-11-50 (a); *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3 (392 SE2d 268) (1990); *McCarty v. Nat. Life &c. Ins. Co.*, 107 Ga. App. 178, 179 (129 SE2d 408) (1962). Further, the trial court is not authorized to weigh the evidence or decide issues of fact. *Barber v.*

*Atlas Concrete Pools*, 155 Ga. App. 118, 118-119 (2) (270 SE2d 471) (1980). Here, even though Smith's expert witness opined that Smith was not competent to stand trial, the State's expert testified that Smith was competent to do so. Smith contends that a directed verdict was warranted because his expert conducted a more thorough evaluation of his competency. The State's expert, however, reviewed the results of the tests performed by Smith's expert and conducted her own evaluation of Smith's mental health to find him competent to stand trial. Consequently, as the evidence on competency was in conflict, the trial court did not err by denying Smith's motion for a directed verdict on this issue.

3. Smith contends the trial court erred during jury selection for the competency hearing by excusing a potential juror who voiced concern about her ability to be fair and impartial because her husband was mentally ill. She testified, "I feel I would feel sorry for someone that is mental [sic] because I live with that every day and know what it does to a person because I know what it's done to me as a person." When asked by the trial court whether she could make a fair and impartial decision on whether Smith was competent, she replied that she did not think she could because the stress would be too much. The juror also stated that she could not separate her emotions from the evidence presented because a mentally ill person has no control over his actions. Smith contends the trial court erred by excusing this juror because the evidence did not show that she had such a fixed and definite opinion that it would not be changed by the evidence and the charge of the court.

Smith further contends the trial court erred by failing to excuse another juror during the guilt-innocence trial who stated that she had been the victim of an attempted rape and that it would be hard for her to be fair and impartial. The trial court noted that the juror said that she could be fair to Smith, and in the court's opinion, the juror did not hold a fixed opinion regarding Smith's guilt.

> The decision to strike a potential juror for cause lies within the sound discretion of the trial court, and before a potential juror is so excused, it must be shown that the individual holds an opinion of the defendant's guilt or innocence that is so fixed and definite that the individual will not be able to set the opinion aside and decide the case based upon the evidence and the court's instructions.

(Citation omitted.) *Stokes v. State*, 281 Ga. 825, 827 (2) (642 SE2d 82) (2007). Given that the first juror expressed an inability to judge Smith's competency on the merits, and that after the second juror expressed a willingness to be fair the trial court found she had no

fixed opinion about Smith's guilt, the trial court did not abuse its discretion by excusing the first juror and denying Smith's challenge to the second. These enumerations of error are without merit.

4. Smith argues that the trial court erred in sentencing him to life without parole as a recidivist.

(a) Smith first argues that his sentence of life without parole was not authorized because the judge failed to mention OCGA § 17-10-7 when he orally pronounced sentence, but included the Code section in the written final disposition. We disagree. While the court cannot increase a defendant's punishment in its written sentence, *Hinton v. State*, 127 Ga. App. 853 (195 SE2d 472) (1973), in this case Smith's sentence did not change. He was still sentenced to life in prison without parole.

(b) Smith argues that neither the State's notice of evidence in aggravation of sentence nor his written sentence specifies which subsection of OCGA § 17-10-7 was being applied to him, but that the trial court had the discretion to sentence him under subsection (b) to a term of years because none of Smith's previous convictions were for a violent felony.

OCGA § 17-10-7 provides:

> (a) Except as otherwise provided in subsection (b) of this Code section, any person convicted of a felony offense in this state . . . , who shall afterwards commit a felony punishable by confinement in a penal institution, shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.
>
> (b) (1) As used in this subsection, the term "serious violent felony" means a serious violent felony as defined in subsection (a) of Code Section 17-10-6.1.
>
> (2) Any person who has been convicted of a serious violent felony in this state . . . and who after such first conviction subsequently commits and is convicted of a serious violent felony for which such person is not sentenced to death shall be sentenced to imprisonment for life without parole. Any such sentence of life without parole shall not be suspended, stayed, probated, deferred, or withheld, and any such person sentenced pursuant to this paragraph shall not be eligible for any form of pardon, parole, or early release . . . except as may be authorized by any existing or future provisions of the Constitution.

(c) Except as otherwise provided in subsection (b) of this Code section, any person who, after having been convicted under the laws of this state for three felonies . . . commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

. . .

We find no error in the sentencing. The case law is clear that subsections (a) and (c) of OCGA § 17-10-7 must be read together and the record is clear that both subsections apply in this case. The State introduced certified records of Smith's six prior felony convictions, about which it had given notice, and argued that Smith should be sentenced to two consecutive life sentences without the possibility of parole plus another 60 years, consecutive to the life sentences, under OCGA § 17-10-7 (c). Under the applicable version of OCGA § 17-10-7, the trial court was required to sentence Smith to life imprisonment without eligibility for parole.

While it might have been the better practice for the trial court to plainly indicate on its final disposition which subsection of the repeat offender statute applies to [Smith's] recidivist sentence, the failure to do so does not amount to reversible error. As in *Gilbert* [*v. State*, 265 Ga. App. 76, 79 (4) (593 SE2d 25) (2003)], the record here is clear as to how many felonies the trial court was relying upon, and therefore it was easily discernible pursuant to which subsection the trial court was imposing the sentence.

(Citation and punctuation omitted.) *Harper v. State*, 270 Ga. App. 376, 378 (2) (606 SE2d 599) (2004). Smith's additional contentions attacking his sentence are without merit.

5. Smith also contends the evidence was insufficient to establish the asportation necessary to prove kidnapping. See *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008). Under *Garza*, whether a putative asportation was more than merely incidental to another crime depends upon four factors:

(1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself

presented a significant danger to the victim independent of the danger posed by the separate offense.

*State v. Clements*, 289 Ga. 640, 647 (2) (c) (715 SE2d 59) (2011).[1] Here, the evidence shows that Smith forced the victim from the laundry room to a stall in a restroom. Although the duration was short, the movement increased the danger to the victim because it isolated her from a place where others might enter to a more secluded and remote location. Further, the movement was not an inherent part of the crime of rape. Under these circumstances, this evidence was sufficient to prove the element of asportation. See *Henderson v. State*, 285 Ga. 240, 245 (5) (675 SE2d 28) (2009) (noting that the kidnapping statute is intended to address movement serving to substantially isolate the victim from protection or rescue); *Brown v. State*, 288 Ga. 902 (3) (708 SE2d 294) (2011) (evidence of asportation sufficient when all but one *Garza* factor supported the verdict).

Accordingly, this enumeration of error is without merit.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED OCTOBER 20, 2011.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Peggy R. Katz, Lenny I. Krick, Paige Reece Whitaker*, Assistant District Attorneys, for appellee.

---

[1] The legislature subsequently amended the kidnapping statute to provide that slight movement is sufficient to prove kidnapping as long as the movement was not incidental to another offense, then further defined what actions would not be incidental to another offense. This statute applies to crimes committed on or after the revised statute's effective date, July 1, 2009. OCGA § 1-3-4. The crimes in this case occurred in August 2001, and therefore the standard set forth in *Garza* applies. *Horne v. State*, 298 Ga. App. 601, 603 (1), n. 1 (680 SE2d 616) (2009).