## A11A2130. CALLOWAY v. THE STATE.
### (722 SE2d 422)

DILLARD, Judge.

Robert Calloway was convicted by a jury of kidnapping, aggravated assault, aggravated battery, and false imprisonment. On appeal, Calloway contends that (1) he was denied the trial counsel of his choosing, (2) he was constructively denied trial counsel due to his strained relationship with appointed counsel, and (3) the evidence was insufficient to sustain his conviction for kidnapping. For the reasons set forth infra, we affirm Calloway's convictions.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on the evening of August 28, 2001, Calloway became angry with the victim—his girlfriend—after she returned home from visiting another male friend. As her young sons slept upstairs, Calloway unleashed his fury on the victim by repeatedly stabbing her in the back and neck with a pocket knife.

When this attack ceased, Calloway realized what he had done, panicked, and called his mother. After speaking with his mother, Calloway told the victim that he would drive her to the hospital. And although the victim wanted to call an ambulance and did not want to

---

[1] *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

leave her children alone, Calloway insisted that she would reach the hospital faster if he drove. The victim finally agreed to this arrangement and got inside Calloway's truck.

As the two were driving, the victim realized that Calloway had passed the turn for the hospital. And when she asked why he had done so, Calloway responded that he was taking her to his mother's house. This statement proved to be false, and Calloway eventually explained that he intended to kill the victim and himself. Calloway then drove to a semi-deserted road, where he pulled over and again took out the knife.

The victim unsuccessfully tried to wrest the knife from Calloway's hands before fleeing from the truck when she spotted a passing car. But the other vehicle did not stop, and Calloway chased and caught the victim before again stabbing her numerous times in the back and throat. Consequently, she fell to the ground and lay motionless before Calloway dragged her farther into a ditch and left the scene, believing her to be dead.

Calloway then drove to the home of a friend, who observed a red substance—presumably blood—on his hands, shorts, and shoes. When Calloway began to explain that he had murdered his girlfriend, the friend told him to "go and do what you've got to do" and then called the police after Calloway departed.

Meanwhile, the victim spent the remainder of the night in the ditch, suffering bug bites and bleeding from her many wounds. But notwithstanding this perilous predicament, she somehow summoned the strength to roll over three times into a position that made her body more visible from the road. And the next morning, she was discovered by a passerby who happened to notice her body. The victim was then transported to a hospital and arrived in severe shock, having lost nearly half of her blood volume. As a result of the attack, she also sustained a lacerated trachea tube and pharynx, a puncture wound to the hand, nerve damage to her face that caused permanent paralysis of the muscles around her left eye, and a collapsed lung.

Thereafter, Calloway was arrested, brought to trial, and convicted by a jury of one count of kidnapping,[2] one count of aggravated assault,[3] one count of aggravated battery,[4] and one count of false

---

[2] OCGA § 16-5-40 (a) ("A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will.").

[3] OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . .").

[4] OCGA § 16-5-24 (a) ("A person commits the offense of aggravated battery when he or

imprisonment.[5] This appeal follows.

At the outset, we note that after a defendant has been convicted, "we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence."[6] And on appeal, we do not weigh the evidence or determine witness credibility, "but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt."[7] With these guiding principles in mind, we will now address each of Calloway's enumerations of error in turn.

1. Calloway first contends that he was denied the counsel of his choosing when the trial court declined to continue the trial proceedings after he indicated that he had retained new counsel. We disagree.

The Georgia Constitution provides that "[e]very person charged with an offense against the laws of this state shall have the privilege and benefit of counsel . . . ."[8] Our Supreme Court has construed this constitutional provision to "confer upon every person indicted for [a] crime a most valuable and important constitutional right, which entitles him to be defended by counsel of his own selection whenever he is able and willing to employ an attorney and uses *reasonable diligence* to obtain his services."[9] Whether a defendant has used "reasonable diligence" is a question of fact, and it is within a trial judge's discretion to either grant or deny a requested continuance when retained counsel is absent.[10] We will reverse the judge's decision in this regard only when there has been an abuse of that discretion.[11]

And here, the record shows that Calloway was represented at trial by an appointed attorney—notably, his third such appointed counsel.[12] On the first day of trial, after a jury had been empaneled and just as court was prepared to reconvene and the trial was set to begin, Calloway told the judge that he wished to dismiss his counsel

---

she maliciously causes bodily harm to another by . . . seriously disfiguring his or her body or a member thereof.").

[5] OCGA § 16-5-41 (a) ("A person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority.").

[6] *Powell*, 310 Ga. App. at 144 (punctuation omitted).

[7] *Id.* (punctuation omitted).

[8] Ga. Const. Art. I, § I, ¶ XIV; *see also* U. S. Const. Amend. VI.

[9] *Shaw v. State*, 251 Ga. 109, 111 (303 SE2d 448) (1983) (punctuation omitted).

[10] *Id.*

[11] *Id.*

[12] The record suggests that Calloway's prior counsel withdrew due to having conflicts with Calloway.

because he was displeased with his representation. When pressed on this matter, Calloway said that he wanted to be represented by paid counsel and, more specifically, by Bill Murray, a local attorney.

Calloway explained that his family had met with Murray during the preceding lunch break and that, while Murray was not currently present, he would come to court. The judge then questioned Calloway as to why he had waited so long to retain paid counsel when he had been incarcerated for ten months and had known since the previous week that he would be going to trial. And the only explanation offered by Calloway was that he had been unable to afford paid counsel sooner.

The trial court then explained that while Calloway could certainly be represented by any attorney of his choosing, the case would still be tried that day as scheduled. The court further explained that it would give Murray a few minutes to arrive and to confirm that he had indeed been retained by Calloway. Murray's wife was apparently in court and indicated that her husband was at his office but would be on the way; however, when the court questioned Mrs. Murray as to whether her husband had actually been retained by Calloway, she replied that her husband had told Calloway's family that "they would have to talk to the court before he could give them a definite answer." Hearing this, the court decided to proceed with the trial, noting that "[i]f there was some other attorney involved in this case, that other attorney had an obligation to be here."

Calloway now argues that the trial court's decision to proceed with the trial denied him the counsel of his choosing. But the record reflects that Calloway failed to use reasonable diligence in obtaining substitute counsel.[13] Indeed, the trial court stated its belief that because of Calloway's timing, his requested continuance was made for purposes of delay; and the record supports the court's conclusion.[14] Specifically, Calloway's family met with Murray for the first time during the lunch break after a jury had been empaneled and just prior to the start of trial. Further, Murray was never formally retained, as evinced by his wife's statement to the court.[15] Accord-

---

[13] Compare Shaw, 251 Ga. at 109 (defendant sought new counsel 76 days before commencement of trial); Turman v. State, 272 Ga. App. 570, 571 (613 SE2d 126) (2005) (physical precedent only) (defendant sought new counsel the week before trial).

[14] Compare Shaw, 251 Ga. at 112 (facts demonstrated that defendant's lack of counsel was the fault of defendant's attorneys and that defendant's request was not a mere delaying tactic); Turman, 272 Ga. App. at 577 (1) (holding that trial judge erred in proceeding to trial when defendant's counsel was hospitalized and circumstances were beyond defendant's control).

[15] Compare Shaw, 251 Ga. at 109 (defendant paid partial retainer fee and signed contract; defendant's former counsel informed court that he was no longer attorney of record; and

ingly, the trial court did not abuse its discretion in denying Calloway's request for a continuance and instead proceeding with Calloway's appointed counsel, who was prepared for trial.

2. Calloway next contends that he was constructively denied counsel due to his strained relationship with his appointed attorney. We disagree.

Ordinarily, to prove ineffective assistance of counsel, Calloway would need to show that his counsel's performance was deficient and that his defense was prejudiced by this deficient performance.[16] Nevertheless, there are some situations in which a court will presume prejudice; however, these are "extremely limited and apply in only a narrow range of circumstances."[17] Indeed, there are only three instances in which a defendant may rely upon a presumption of prejudice:

> (1) an actual or constructive denial of counsel, (2) government interference with defense counsel, and (3) counsel who labors under an actual conflict of interest that adversely affects his performance.[18]

Calloway argues that the first instance applies in his case—namely, that a strained relationship with his appointed attorney amounted to a constructive denial of counsel. But constructive denial of counsel is only present "when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing."[19] And this, Calloway failed to show.

The record reflects that Calloway's counsel subjected the prosecution's case to meaningful adversarial testing, including cross-examining the State's witnesses, moving for a directed verdict on all

---

attorney testified that although defendant still owed the remainder of retainer fee, defendant honestly believed attorney would represent him at trial); *Turman*, 272 Ga. App. at 571 (defendant retained new attorney who filed a notice of appearance and several motions); *Long v. State*, 119 Ga. App. 82, 84-85 (1) (166 SE2d 365) (1969) (trial court erred in denying defendant's motion for continuance when he had employed counsel who was prepared for trial but who was not present, although counsel's whereabouts were known, and defendant was forced to proceed with unprepared appointed counsel).

[16] *See Harrison v. State*, 298 Ga. App. 870, 873 (3) (681 SE2d 252) (2009) ("Ordinarily, to prove ineffective assistance, [the defendant] would be required to show that his trial counsel's performance was deficient and that this deficient performance prejudiced his defense.").

[17] *Smith v. State*, 312 Ga. App. 174, 175 (1) (718 SE2d 43) (2011) (punctuation omitted).

[18] *Id.* (punctuation omitted); *see also State v. Heath*, 277 Ga. 337, 338 (588 SE2d 738) (2003) (recognizing that the Supreme Court of the United States identified the same three instances in which prejudice will be presumed (citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984))).

[19] *Smith*, 312 Ga. App. at 176 (1); *see also Cuvas v. State*, 306 Ga. App. 679, 682 (1) (d) (703 SE2d 116) (2010) ("[T]he attorney's failure must be complete and must occur throughout the proceeding and not merely at specific points." (punctuation omitted)).

four counts, and making a closing argument on Calloway's behalf. Accordingly, Calloway was not constructively denied counsel, and this enumeration is wholly without merit.[20]

3. Finally, Calloway contends that the evidence of kidnapping was insufficient to sustain his conviction. We disagree.

A person commits the offense of kidnapping when he or she "abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will."[21] Calloway argues, however, that there was no evidence the victim was held against her will because she testified at trial that she willingly got into his truck after the initial assault and tried to keep him calm during the ride. In response, the State contends that the kidnapping occurred when Calloway dragged his girlfriend away from the side of the road and down into a ditch after she attempted to flee from his truck.[22]

Under either set of circumstances, the record reflects sufficient evidence to support a conviction for kidnapping. Indeed, even if the victim's entry into Calloway's truck was voluntary, the testimony at trial revealed that she did so under the mistaken belief that Calloway would take her to the hospital, and the victim attempted to escape further attack after Calloway stopped on the side of the road.[23] At

---

[20] *See Cotton v. State*, 308 Ga. App. 645, 648 (708 SE2d 392) (2011) (no constructive denial when counsel objected on numerous occasions, cross-examined witnesses, and made appropriate motions); *Cuvas*, 306 Ga. App. at 682 (1) (d) (no constructive denial when, *inter alia*, counsel developed a theory of the case, cross-examined witnesses, argued to the jury); *Harrison*, 298 Ga. App. at 874 (3) (no constructive denial when counsel cross-examined witnesses, made appropriate objections, and attempted to keep certain pieces of evidence from jury).

[21] OCGA § 16-5-40 (a).

[22] Although closing arguments were not transcribed, the State explained during sentencing that it had argued to the jury that the basis for false imprisonment was the victim's ride in the truck and that Calloway's act of dragging the victim into the ditch served as the basis of the kidnapping. Calloway did not object to the State's description of its closing argument. We note that the indictment did not detail the underlying facts giving rise to the charges for kidnapping and false imprisonment, but Calloway has never challenged the sufficiency of the indictment. *See Adkins v. State*, 279 Ga. 424, 426 (2) (614 SE2d 67) (2005) ("[A] motion for directed verdict of acquittal is not the proper way to contest the sufficiency of an indictment. A motion for directed verdict of acquittal addresses the sufficiency of the evidence, not the sufficiency of the underlying indictment." (punctuation omitted)); *see also Tibbs v. State*, 211 Ga. App. 250, 251 (1) (438 SE2d 706) (1993) ("[T]he evidence at trial nevertheless must be sufficient to allow a rational factfinder to conclude that the defendant is guilty beyond a reasonable doubt of the offense charged.").

[23] *See Winfrey v. State*, 286 Ga. App. 450, 452 (1) (a) (649 SE2d 561) (2007) (despite victim's initial willingness to accompany defendant, jury was presented with sufficient evidence of kidnapping when defendant held gun to victim's face, victim attempted escape, and defendant dragged victim back to vehicle); *Powell v. State*, 249 Ga. App. 344, 346 (2) (b) (548 SE2d 447) (2001) (despite victim's testimony that she willingly accompanied defendant, evidence that defendant injured and dragged and pulled victim sufficient for jury to find unwillingness). *Cf. Pruitt v. State*, 279 Ga. 140, 143 (4) (611 SE2d 47) (2005) (in addressing issue of venue for kidnapping, explaining that "the question is at what point could the jury

that point, Calloway caught her, again stabbed her numerous times, and thereafter dragged her by the legs into a ditch—effectively concealing her from passing traffic—when she was unable to move or otherwise resist.[24] Thus, despite Calloway's contention, the jury was presented with sufficient evidence to find him guilty of kidnapping under either set of facts, no matter how willing the victim might have been to initially remain in Calloway's presence.[25]

Accordingly, for all the foregoing reasons, we affirm Calloway's convictions.

*Judgment affirmed. Mikell, P. J., and Boggs, J., concur.*

DECIDED JANUARY 26, 2012.

*Robert E. Perrine, Jr.*, for appellant.
*Plez H. Hardin, District Attorney, Wesley A. Lambertus, Assistant District Attorney*, for appellee.

---

determine, beyond a reasonable doubt from the evidence, that [the victim] was being held against his will" and looking to circumstances of defendant's behavior and victim's response to find unwillingness).

[24] *See Tolbert v. State*, 313 Ga. App. 46, 55 (3) (720 SE2d 244) (2011) (sufficient evidence of kidnapping when defendant dragged victim by throat through house); *Curtis v. State*, 310 Ga. App. 782, 786 (1) (714 SE2d 666) (2011) (sufficient evidence of kidnapping when defendant dragged victim into house, substantially isolating her from rescue and increasing risk of harm); *Hall v. State*, 308 Ga. App. 858, 862 (1) (709 SE2d 348) (2011) (physical precedent only) (sufficient evidence of kidnapping when defendant substantially isolated victim from others by pulling her body and actually preventing her rescue).

[25] We note that *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), was decided after Calloway was convicted but before he filed his notice of appeal. Thus, according to the "pipeline" rule, *Garza* applies to this case. *See, e.g., Freeman v. State*, 269 Ga. 337, 339 (1) (c) (496 SE2d 716) (1998). *See generally Hall*, 308 Ga. App. at 861 n.9 (1) (providing brief history of *Garza*, the subsequent amendment to the kidnapping statute, and the "pipeline" rule for *Garza* cases). Calloway, however, has not made a *Garza* challenge. Nevertheless, the evidence is sufficient to sustain his conviction. *See supra* notes 22 to 24 and accompanying text.